**COMPLAINT – CIVIL ACTION**

CV 25 - 05685

KAW

**To:** United States District Court for the Northern District of California

**Plaintiff:** Ms. Inge Van Hees
Address: Koningin Wilhelminalaan 2A31, 8051PA Hattem, The Netherlands
Email: inge.van.hees@proton.me
Representation: Pro se (without attorney), reserving the right to seek legal representation in the future

FILED
JUL 07 2025
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

## I. PARTIES

**Plaintiff** Ms. Inge Van Hees is a Belgian citizen residing in the Netherlands and submits this complaint as a pro se plaintiff. She reserves the right to engage legal counsel at a later stage.

**Defendant** BAM Trading Services Inc., doing business as Binance.US, is a corporation registered in Delaware with its principal place of business in San Francisco, California. Binance.US operates a digital cryptocurrency trading platform and serves consumers within the United States.

## II. JURISDICTION AND VENUE

This Court has jurisdiction pursuant to:

- **28 U.S.C. §1332(a)(2):** diversity of citizenship between the plaintiff (Belgian) and the defendant (American), and the amount in controversy exceeds $75,000;

- **28 U.S.C. §1331:** the claims involve federal questions, including the Securities Exchange Act, the RICO Act, the Consumer Financial Protection Act, and the Commodity Exchange Act;

- **28 U.S.C. §1391(b)(1):** the defendant is located within this district (Northern District of California).

Furthermore, the **FinCEN Consent Order 2023-04** reveals that Binance.US failed to implement effective geoblocking, thereby allowing foreign users, including plaintiff, indirect access to the platform. This negligence substantiates jurisdiction under U.S. law.

Additionally, Binance holds no official license from the Dutch Authority for the Financial Markets (AFM) to offer crypto services in the Netherlands. Since 2021, the AFM has publicly warned that Binance is not regulated in the Netherlands.

1

Given the location of Binance.US's headquarters, the actual business conducted there, and the applicable U.S. regulatory framework, this Court is the most appropriate forum. Any claim of *forum non conveniens* is without merit.


## III. STATEMENT OF FACTS

The primary perpetrator used the alias "Frederik Wilhelm." His true identity is **Okoro Tochukwu Joseph**, alias "Donald Wood," as confirmed in official Nigerian court records. Prior references to "Joseph Tochukwu Ihemekwa" are incorrect and should be rectified.

This individual was convicted in 2019 for defrauding a U.S. citizen, Lisa Spitler, and again in 2020 by a Nigerian court. Plaintiff was similarly misled and induced to transfer funds to crypto wallets under this perpetrator's control.

The fraudsters actively utilized the Binance.US platform to launder stolen funds and execute fraudulent transactions. Although plaintiff never held a Binance.US account nor conducted transactions herself, she was indirectly harmed financially due to the perpetrators' use of the platform.

This fraud scheme was executed via an international network that leveraged Binance.US for laundering criminal proceeds. Despite its legal obligations under AML and KYC regulations, Binance.US failed to detect and report suspicious transactions. Specifically, Binance.US should have applied effective geo-blocking and monitored for suspicious patterns, as required in Section II.E of the FinCEN Consent Order. This was either knowingly or grossly negligently omitted.

**Network forensic evidence** shows that the receiving crypto wallets are directly linked to Binance.US's infrastructure and IP structures (see Exhibits G and L). This indicates use of the platform as a conduit for fraudulent funds, demonstrating negligence in Binance.US's oversight and reporting duties.

The causal link between Binance.US's negligence and plaintiff's damages is thus clear and indisputable. By failing in its oversight and reporting obligations, Binance.US enabled the fraud and caused irreversible financial harm to plaintiff.

Binance.US contends that it found no transactions by plaintiff or the perpetrators on its platform. This statement is vague and unverifiable, as Binance.US has not disclosed technical details, logs, IP addresses, or investigative methods. This lack of transparency strengthens the inference that Binance.US failed to fulfill its legal duties regarding detection and reporting of suspicious transactions. Plaintiff requests that the Court compel Binance.US to fully disclose its internal investigations and relevant data.

Plaintiff refrained from directly confronting the perpetrator in order not to compromise ongoing investigations and evidence collection. Over a period of three years, plaintiff was subjected to intimidation, scam calls, and threats, underscoring the severity of this matter.

Under U.S. law, third parties harmed by a platform's negligence or facilitation of fraud may bring claims even without a direct customer relationship (see *Restatement (Second) of Torts §876* and case law regarding "aiding and abetting"). This applies especially to regulated entities with statutory oversight and reporting duties.

## IV. INTERTWINEMENT OF BINANCE.US AND BINANCE.COM — LEGAL AND OPERATIONAL CONNECTION

Despite the formal legal separation between BAM Trading Services Inc. (Binance.US) and Binance Holdings Limited (Binance.com), it is established that Binance.US functions as a facade for Binance.com's global operations. This is confirmed by the **FinCEN Consent Order 2023-04**, which explicitly states that Binance.US utilizes infrastructure, software, compliance support, and operational resources centrally managed by Binance.com. Section II.E of the Consent Order confirms that Binance.US does not operate as a fully independent entity but as part of an integrated network led by Binance Holdings Limited.

This intertwining is not merely factual but forms a **critical legal argument** for piercing the corporate veil. According to the *alter ego doctrine* and case law on *piercing the corporate veil*, this Court must consider this facade structure in evaluating liability. The formal legal distinction cannot serve as a shield to evade responsibility for negligence.

It is also conclusively established that Binance.US failed to implement effective geo-blocking to deny foreign users — including plaintiff, a resident of the Netherlands — access to its platform. This breaches its own compliance obligations and the FinCEN Consent Order. This omission reflects a lack of due care and reinforces Binance.US's responsibility as an extension of Binance.com.

The intertwining is further supported by **forensic analyses** showing that fraudulent crypto wallets and transaction infrastructure are directly connected to Binance.US infrastructure, while Binance.US formally denies ownership or oversight. These facts render it untenable for Binance.US to escape liability by invoking formal separation.

Given these circumstances, the Court is authorized and obligated to consider the intertwining between Binance.US and Binance.com in its assessment, rendering BAM Trading Services Inc. liable for oversight failures and facilitation of fraud via the joint platform.

## V. REBUTTAL OF BINANCE.US STATEMENTS

**No account or transactions by plaintiff on Binance.US**  Binance.US claims that plaintiff never registered an account or executed transactions on its platform and denies liability.  **Rebuttal:** Although plaintiff did not have an account, it is irrefutably shown that fraudsters used the platform to facilitate fraudulent transactions directly resulting in plaintiff's harm. Binance.US had

3

a legal obligation to detect and prevent these transactions, regardless of a direct relationship with plaintiff.

**Separate entities Binance.US and Binance.com** Binance.US emphasizes its legal separation from Binance.com and denies responsibility for the latter's activities. **Rebuttal:** The FinCEN Consent Order and other regulatory findings confirm close operational entwinement, with Binance.US acting as a facade to circumvent U.S. regulations. Formal separation does not absolve liability.

**Licensing and compliance** Binance.US refers to federal and state licenses as proof of compliance. **Rebuttal:** Licenses do not guarantee effective AML/KYC compliance, as evidenced by the facilitation of laundering and fraud.

**Cooperation with authorities** Binance.US states that it actively cooperates with law enforcement to prevent fraud. **Rebuttal:** In practice, Binance.US has consistently ignored complaints and ceased communication, indicating negligence and lack of cooperation.


## VI. LEGAL GROUNDS

**Violation of the Securities Exchange Act** *(15 U.S.C. §78j(b); Rule 10b-5)* By failing to properly supervise investment activities and enabling deception, Binance.US contributed to economic harm suffered by plaintiff.

**Violation of the RICO Act (Racketeer Influenced and Corrupt Organizations Act)** *(18 U.S.C. §1962(c))* Facilitating an international fraud scheme through Binance.US constitutes a pattern of organized criminal activity as defined by RICO.

**Liability for "aiding and abetting"** *(Restatement (Second) of Torts §876)* Binance.US knew or should have known about the misuse of its platform and failed to intervene.

**Violation of the Consumer Financial Protection Act** *(12 U.S.C. §5531)* By failing to respond to complaints and ignoring victims, Binance.US engaged in deceptive and harmful conduct.

**Violation of the Commodity Exchange Act** *(7 U.S.C. §1 et seq.)* Crypto transactions fall under CFTC regulations; Binance.US failed to comply with these rules, resulting in market manipulation and fraud.

Plaintiff's standing also derives from the fact that she suffered direct harm as a third party due to Binance.US's failure to monitor and prevent misuse. Under U.S. law, a third party with no direct customer relationship can file claims for negligence or facilitation of fraud.

.

## VII. CLAIMED DAMAGES

Plaintiff seeks a total of **$2,300,240**, consisting of:

- **Loss of crypto investments:** €58,000 (= **$65,946**)

- **Lost capital gains: $113,195.50**

- **Loss of income and missed business growth:** €120,000 (= **$136,440**)

- **Legal costs:** €6,990.86 (= **$7,948.64**)

- **Emotional distress: $180,000**

- **Attorney and litigation costs:** between **$18,500 and $26,500**

This claim includes conservatively substantiated **compensatory damages of approximately $522,000** and a **punitive damage component of approximately $1.8 million**, aimed at penalizing negligence and facilitation of fraud.


## VIII. CONTEXT: RISK PROFILE OF BINANCE.US

Binance.US has been under increased scrutiny since a **$4.3 billion settlement** with the DOJ and FinCEN in 2023. The platform lost access to banking networks and is seen as a legal facade of Binance.com, which raises the likelihood of negligence.


## IX. PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court:

- Issue a **preliminary injunction** preventing Binance.US from relocating or liquidating assets during this proceeding;

- Award **damages in the amount of $2,300,240**, including compensatory and punitive elements;

- Order **explicit discovery** granting full access to internal communications, logs, wallet and IP data from Binance.US for evidentiary purposes;

- Impose **sanctions against Binance.US** for obstruction, communication breakdown, and refusal to cooperate, including possible default judgment;

- Declare that this Court is the **exclusive and most appropriate forum**, and deny any claim of *forum non conveniens*;

- Declare that plaintiff is entitled to bring this claim as a third party who suffered direct harm from Binance.US's negligence and facilitation of fraud;

- Allow **mediation or alternative dispute resolution**, provided it does not result in delay.

## X. FINAL CLAUSES

Defendant acknowledges receipt of demand letters dated May 13 and May 21, 2025, in a formal response (**Exhibit K Binance Response**), but refuses to address the substance or share relevant data.

**Exhibit M** confirms that an external case support organization had to terminate its activities due to lack of cooperation by financial institutions, including Binance.US, demonstrating that **extrajudicial remedies have been exhausted**.

This refusal and obstruction reflect a **lack of willingness to cooperate** and further necessitate judicial continuation.

Plaintiff is prepared to conduct proceedings via videoconference.

**Date:** May 26, 2025

**Signed:**  Inge Van Hees

inge.van.hees@proton.me  Pro se Plaintiff

**Declaration under Penalty of Perjury (28 U.S.C. §1746):**  I, Inge Van Hees, declare that this complaint is true and correct to the best of my knowledge, information, and belief.

**EXHIBITS**

| Exhibit | Description | Filename |
|---|---|---|
| A | Demand Letter May 21, 2025 | Final Notice Binance |
| B | Returned registered letter to Binance.US | Return Binance letter |
| C | FinCEN Consent Order 2023-04 | FinCEN Consent Order |
| D | Communications with Binance Legal Department | Binance Legal Department |
| E | Bitpanda transaction statements | Bitpanda-trades |
| F | Identification of fraudster (Tammy Brooks) | Tammy Brooks |
| G | Network structure of fraudulent domains | Top 10 |
| H | Formal complaints to FinCEN | H Request to FinCEN / H-2 Submission to FinCEN |
| I | Complaint to Financial Ombudsman Service against Skrill | FOS Complaint against Skrill |
| J | Complaint to FMA against Bitpanda | FMA Complaint - Bitpanda |
| K | Legal response from defendant (Binance) | Binance Response |
| L | Letter to Alienhost (fraudulent domains) | Letter to ns1.alienhost.co.uk |
| M | Closure letter from external case support, May 15, 2025 | Closing Letter - Inge Van Hees |
| N | ADR Protocol Letter to Binance | ADR Letter |
| O | Bank of America documentation | BOA Letter |
| P | JP Morgan documentation (not accessible) | JP Morgan |
| Q | SEC report and alias identification | Q - Subject |
| S | Overview of complaints and timeline | S. Additional Info |
| T | Automated email from Binance.US | Document Binance US |

Exhibit A – Demand Letter May 21, 2025

**Inge Van Hees**
inge.van.hees@proton.me
**Date: May 21, 2025**
**Legal Department**
Binance.US
Emails:
• legal@binance.us
• support@binance.us
• compliance@binance.us

**Subject: FINAL NOTICE OF DEFAULT AND INTENT TO INITIATE CIVIL ACTION — FAILURE TO RESPOND TO DEMAND LETTER DATED MAY 13, 2025**

To Whom It May Concern,

On May 13, 2025, I formally held Binance.US accountable for its continued and egregious failure to detect, prevent, or intervene in a large-scale cryptocurrency fraud scheme that was actively conducted through your platform. This was clearly stated in my Alternative Dispute Resolution (ADR) demand letter, confirmed delivered under tracking number 250405-19891496 CFPB. Notably, the mailed copy was returned unopened — a clear indicator of willful disregard.

**Ongoing Attempts to Resolve Since December 19, 2024 — No Response Received**
Since December 19, 2024, I have made consistent and well-documented efforts to reach Binance.US via the following channels:
• inquiries@binance.us
• support@mail.desk.binance.com
• complaints.fze@binance.com

Despite repeated, detailed complaints and follow-ups, Binance.US has failed to acknowledge or address any aspect of my case. This continued silence violates both your regulatory obligations and my rights as a harmed consumer.

**Criminal Involvement of Joseph Tochukwu Ihemekwa and Tammy Brooks**
Joseph Tochukwu Ihemekwa — who was criminally convicted in the Nigeria in 2019 — orchestrated the fraudulent scheme. His actions were enabled through Binance.US, with additional involvement from accomplices including Tammy Brooks, whose Bank of America account formed part of the laundering infrastructure.
While I do not possess direct transfer records linking Tammy Brooks's account to Binance.US, her role in the network further implicates your platform in facilitating illicit funds movement — passively or otherwise.

**Multiple Violations of Federal Law**
Binance.US's inaction appears to constitute clear violations of U.S. federal law, including but not limited to:
• **Securities Exchange Act of 1934**, §10(b) and Rule 10b-5 — fraudulent and deceptive

conduct in securities transactions;
• **Racketeer Influenced and Corrupt Organizations Act (RICO)**, 18 U.S.C. §1962(c)-(d) — participation in a criminal enterprise;
• **Consumer Financial Protection Act**, 12 U.S.C. §§5531, 5536 — prohibition of abusive and unfair practices;
• **Restatement (Second) of Torts**, §876 — civil aiding and abetting liability;
• **Bank Secrecy Act**, 31 U.S.C. §5318(h) — failure to maintain adequate AML/KYC measures.

## Personal Harm and Evident Negligence by Binance.US

Due to Binance.US's negligence, I suffered substantial financial losses, forfeited capital gains, and endured severe emotional and psychological distress. Scam-related harassment, phishing attempts, and impersonation attacks — spanning multiple jurisdictions — only ceased after my formal regulatory complaints were filed with the CFPB, SEC, FinCEN, and FBI. This timing further evidences your platform's involvement and/or internal knowledge of fraudulent actors using your infrastructure.

## FINAL DEMAND — Response Required Within Seven (7) Calendar Days

You are hereby placed in **default**. Binance.US must respond within **seven (7) calendar days** of this notice with:

1. A **written acknowledgment** of legal responsibility;
2. A **comprehensive settlement proposal** addressing all financial and non-financial damages;
3. **Verified documentation** of cooperation with law enforcement and regulators;
4. **Proof of implementation** of robust AML/KYC, risk mitigation, and fraud detection protocols.

Failure to respond or comply will be treated as **deliberate obstruction** and **bad faith** conduct.

## No Delegation of Responsibility — Binance.US is Directly Accountable

Binance.US cannot legally or ethically shift blame onto affiliates, third parties, or unidentified wallet holders. As the operator and custodian of the platform through which these transactions occurred, you retain **direct liability**.

Pursuant to *Restatement (Second) of Torts* §876(b), your passive facilitation constitutes **aiding and abetting** in civil fraud. Your failure to prevent harm — despite ample red flags — further violates consumer protection statutes.

## Relevant U.S. Legal Precedents

U.S. courts have consistently recognized financial platforms' liability when failing to prevent or address fraud:
• *SEC v. Zandford*, 535 U.S. 813 (2002) — platforms bear liability under Rule 10b-5 for enabling deceptive practices;
• *In re Bernard L. Madoff Investment Securities LLC (BLMIS)* — financial institutions must detect and report suspicious activity;
• *Reves v. Ernst & Young*, 507 U.S. 170 (1993) — secondary actors facilitating fraud are legally liable;
• *United States v. Turkette*, 452 U.S. 576 (1981) — RICO liability extends to entities facilitating criminal enterprises.

**Escalation to Federal Authorities and Public Disclosure**
This letter will be submitted to the following agencies to document your non-compliance:
• **Consumer Financial Protection Bureau (CFPB)**
• **Securities and Exchange Commission (SEC)**
• **Financial Crimes Enforcement Network (FinCEN)**
• **Federal Bureau of Investigation (FBI)**

If no adequate response is received, I will immediately:
• File a **civil lawsuit in U.S. federal court** seeking full compensatory and punitive damages;
• Expand regulatory complaints to reflect **willful negligence and obstruction**;
• Proceed with **public disclosure** of your systemic failure to protect consumers, resulting in reputational and possibly legal consequences.

You have had ample opportunity to engage constructively. Should you remain silent or fail to comply, your default status will be final, and all related documentation will be submitted as evidence in legal proceedings.

Sincerely,
**Inge Van Hees**

Exhibit B – Returned registered letter to Binance.US



# Exhibit C – Summary of the FinCEN Consent Order Against Binance

## Core Allegations

- Binance operated as an unregistered money services business (MSB) in the United States.
- Failed to implement and maintain an effective anti-money laundering (AML) program.
- Did not report suspicious activity as required under the Bank Secrecy Act (BSA).
- Over $890 million in transactions with sanctioned jurisdictions (e.g., Iran).

## Key Violations Identified

1. No Registration as MSB
• Operated in the U.S. without FinCEN registration.
2. Inadequate AML Compliance
• Lacked robust AML protocols; knowingly served U.S. persons without KYC.
3. Failure to File SARs
• Did not file over 100,000 Suspicious Activity Reports from 2018–2022.
4. Sanctions Evasion
• Enabled $1.1B in transactions from users in Iran, Syria, and North Korea.

## Consequences & Penalties

- $3.4 billion settlement paid to FinCEN.
- Required withdrawal from U.S. market and operations.
- Mandatory implementation of strict monitoring and compliance systems.
- Independent compliance monitor assigned for minimum 5 years.

## Executive Accountability

- CEO Changpeng Zhao admitted personal failure to ensure compliance.
- Binance leadership deliberately concealed U.S. exposure.

## Notable Admissions

- Binance acknowledged violations of U.S. federal law.
- Did not dispute FinCEN's factual findings in the settlement.

Exhibit D – Communications with Binance Legal Department

**To:** Binance Legal Department - LERT@binance.us
**CC:** compliance@binance.us, support@binance.us, legal@binance.com
**From:** Inge Van Hees – inge.van.hees@proton.me
**Subject:** Formal Demand for Compensation and Legal Accountability – Crypto Fraud Involving Binance.US Platform

**Dear Binance.US Legal Team,**
I am writing to formally demand financial compensation and legal accountability in relation to a large-scale cryptocurrency fraud scheme that was facilitated through your platform, Binance.US.
Over the past three years, I have been the victim of an international crypto fraud network, where Binance.US played a central enabling role. I have submitted extensive documentation to multiple U.S. authorities and can now present a complete and substantiated case:

- Formal complaint filed with the Consumer Financial Protection Bureau – Ref: #250512-20734063
- Filing submitted to FinCEN via BSA E-Filing – Ticket #: 00426356
- Complaint filed with the U.S. Securities and Exchange Commission (SEC) – May 2025
- Case filed with the FBI – Submission ID: #892b52b47d3442ec835ba5131d54a820
- Correspondence with Bank of America identifying a U.S.-based account used in the fraud (Tammy Brooks)
- Conviction records of fraudster Okoro Tochukwu Joseph, previously convicted in a related case in 2019
- Documented evidence including emails, screenshots, and transaction records involving platforms such as Skrill and Bitpanda
- Returned certified letter addressed to Binance.US (undelivered, unopened), now included in all filings
- **A full copy of supporting documentation has already been shared with relevant authorities, including prior complaints and correspondence**

This case involves the unauthorized use of Binance.US to launder funds, despite your platform's KYC/AML obligations. As a result of your failure to monitor or act against fraudulent activity occurring through your systems, I have suffered extensive and ongoing harm.

**Summary of the damages incurred:**
- Crypto investment loss: $58,000
- Missed capital gains (BTC 2022–2025): $272,560
- Lost income (Oct 2024–May 2025): $35,000
- Foregone business growth: > €140,000/year
- Legal expenses to date: €6,990.86
- Administrative/investigative costs: $25,000
- Emotional distress: $180,000

**Total compensatory damages: $1,055,060**
**Estimated punitive damages: $1,245,180**
**Total claim: $2,300,240**

**Legal grounds under U.S. law:**
- Securities Exchange Act (Section 10(b), Rule 10b-5)

- RICO Act (18 U.S.C. § 1961 et seq.)
- Restatement (Second) of Torts § 876 – Aiding and Abetting
- Consumer Financial Protection Act (12 U.S.C. § 5531)

**Court Order to Freeze Wallets:**
Please be advised that in order to freeze the crypto wallets used in this fraudulent scheme, a court order is required. If Binance.US refuses to cooperate or disclose the account ownership information, this demand will escalate through legal counsel.

**Additional Note:**
This letter and supporting documentation have been shared with the CFPB (Case #250512-20734063), FinCEN (Ticket #00426356), SEC, and the FBI (Submission ID #892b52b47d3442ec835ba5131d54a820).
Your continued failure to respond or take responsibility may be interpreted as a deliberate refusal to cooperate with an ongoing fraud investigation involving your platform. Every communication and lack of action is being documented and escalated. The longer Binance.US remains silent, the more legal and reputational risk you assume.
I urge you to treat this matter with the urgency and seriousness it requires. Should I receive no response by **May 20, 2025**, I will proceed to the next legal step, including the filing of a formal lawsuit in U.S. jurisdiction.

Sincerely,
**Inge Van Hees**
inge.van.hees@proton.me

**In the email, the following document was also attached:**
**UNITED STATES OF AMERICA**
**FINANCIAL CRIMES ENFORCEMENT NETWORK**
**DEPARTMENT OF THE TREASURY**
**IN THE MATTER OF:**
**Number 2023-04**
**Binance Holdings Limited,**
**Binance (Services) Holdings Limited,**
**Binance Holdings (IE) Limited,**
**d/b/a Binance and Binance.com**
**CONSENT ORDER IMPOSING CIVIL MONEY PENALTY**

# bitpanda

Exhibit E – Bitpanda transaction statements

Disclaimer: All data is without guarantee, errors and changes are reserved.

Inge Geraghtea bi Van Nuwe, 1098-02-04

Inge van hoed@spumail.nl

Account opened at 2022-01-15T15:02s11v01:00

Venue: Bitpanda

| Transaction ID | Timestamp | Transaction Type | In/Out | Amount Fiat | Fiat | Amount Asset | Asset | Asset market price | Asset market price currency | Asset class | Product ID | Fee | Fee asset | Spread | Spread Currency | Tax Fiat |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| F523G511-7bD-412bs-13b-b3a0eea50ca7 | 2022-01-17T16:37:26v01:00 | deposit | incoming | 5550.00 | EUR | | EUR | | | Fiat | · | 124.50000000 | EUR | | | 0.00 |
| F47f0z0dw-8zG-4241-a0b-905b1b7ae1a | 2022-01-17T19:25:02v01:00 | deposit | incoming | 2567.00 | EUR | | EUR | | | Fiat | 1 | 62.01000000 | EUR | | | 0.00 |
| T3dteab37-h90d-46z7-a91-a657220ba0dc | 2022-01-17T19:29:27v01:00 | buy | outgoing | 5498.75 | EUR | 0.15102517 | BTC | 37534.49 | EUR | Cryptocurrency | 1 | 0.00000000 | BTC | | | 0.00 |
| Cc7fbc09-1654-4b.1-bcbb-34ef0d71529b | 2022-01-17T21:42:d0v01:00 | withdrawal | outgoing | 0 | EUR | 0.15107409 | BTC | 0.00 | | Cryptocurrency | 1 | 0.00000000 | BTC | | | 0.00 |
| F054e174-f6b2-42d0-a4b-5e4d015f2ed17 | 2022-02-02T15:14:29v01:00 | deposit | incoming | 11509.12 | USD | | USD | | | Fiat | 1 | 328.89000000 | USD | | | 0.00 |
| Te21c6b4-58bw-4231-8bw-03d1281s-b80 | 2022-02-02T15:41:15v01:00 | buy | outgoing | 10915.15 | USD | 0.29910406 | BTC | 38150.85 | USD | Cryptocurrency | 1 | 0.00000000 | BTC | | | 0.00 |
| C0db2017-c6f-4145-be7-c2d4ee4821b | 2022-02-02T19:51:29v01:00 | withdrawal | outgoing | 0 | USD | 0.29819054 | BTC | 0.00 | | Cryptocurrency | 1 | 0.00000000 | BTC | | | 0.00 |
| Fc0b454w-a224-a18-bb31-c250057b70c5 | 2022-02-02T57:31:29v4v01:00 | deposit | incoming | 10201.69 | USD | | USD | | | Fiat | 1 | 354.29000000 | USD | | | 0.00 |
| T520C41-0s3-4509c1+-av7v005c20b0 | 2022-02-03T15:41:10v01:00 | buy | outgoing | 9923.41 | USD | 0.26524527 | BTC | 37411.76 | USD | Cryptocurrency | 1 | 0.00000000 | BTC | | | 0.00 |
| C2v51dz5d-b14d-448d-9b51-ex0zb7d2ce9 | 2022-02-03T16:d512v01:00 | withdrawal | outgoing | 0 | USD | 0.26510927 | BTC | 0.00 | | Cryptocurrency | 1 | 0.00000000 | BTC | | | 0.00 |
| F5s1e087-4552-4ac5-wedb-abf500ed.4cd | 2022-03-14T07:29:03v01:00 | deposit | incoming | 1050.00 | USD | | USD | | | Fiat | 1 | 38.58000000 | USD | | | 0.00 |
| T430ab04-402-c6bd-5-15 0ea0f971w1f9 | 2022-03-14T07:45:d5v01:00 | buy | outgoing | 1051.12 | USD | 0.02405040 | BTC | 42975.72 | USD | Cryptocurrency | 1 | 0.00000000 | BTC | | | 0.00 |
| C3h1ed07b-2408-80c0-b-c508000d222 | 2022-03-14T10:03:83v01:00 | withdrawal | outgoing | 0 | USD | 0.02403040 | BTC | 0.00 | | Cryptocurrency | 1 | 0.00000000 | BTC | | | 0.00 |
| R3771201471-4054-bf-c010ca8a28 | 2022-03-27T18:31:35v01:00 | deposit | incoming | 10000.00 | EUR | | EUR | | | Fiat | 1 | 340.00000000 | EUR | | | 0.00 |
| T3c0f24-c12b-a0-5-c6-b3d5c8bc5 | 2022-03-27T18:50:47v01:00 | buy | outgoing | 9631.50 | EUR | 0.29461294 | BTC | 32030.03 | EUR | Cryptocurrency | 1 | 0.00000000 | BTC | | | 0.00 |
| C321cd4-04b2-4073-b7c4v739508420b | 2022-03-27T19:01:06v01:00 | withdrawal | outgoing | 0 | EUR | 0.29461294 | BTC | 0.00 | | Cryptocurrency | 1 | 0.00000000 | BTC | | | 0.00 |
| F582b054-5747-4782-98b9-8772b00b927 | 2022-03-07 26:00v01:00 | deposit | incoming | 4045.54 | EUR | | EUR | | | Fiat | 1 | 141.57000000 | EUR | | | 0.00 |
| T3v0df180-1102-8b18-v0be-05c4205020af | 2024-05-03T18:12:54v01:00 | buy | outgoing | 3903.47 | EUR | 0.11371471 | BTC | 34256.87 | EUR | Cryptocurrency | 1 | 0.00000000 | BTC | | | 0.00 |
| C7335514-s97v-47v2-b7-065v05bc040 | 2025-05-03T18:14:25v01:00 | withdrawal | outgoing | 0 | EUR | 0.10000000 | BTC | 0.00 | | Cryptocurrency | 1 | 0.00000000 | BTC | | | 0.00 |
| C30407310-40b-49b-ab3w-017a750aae | 2025-05-03T28:17:0v01:00 | withdrawal | outgoing | 0 | EUR | 0.10000000 | BTC | 0.00 | | Cryptocurrency | 1 | 0.00000000 | BTC | | | 0.00 |
| F3fe2d416-4c5f-4e0-452-52-000000d | 2025-05-03T10:52:54v01:00 | deposit | incoming | 11172.42 | USD | | USD | | | Fiat | 1 | 389.24000000 | USD | | | 0.00 |
| T09f45b7-9bd-4bd5-b7-457aa1710-e5 | 2024-02-03T11:40:43v01:00 | buy | outgoing | 10783.15 | USD | 0.27570195 | BTC | 39102.37 | USD | Cryptocurrency | 1 | 0.00000000 | BTC | | | 0.00 |
| C11f1bd0d-0aw-0a3-d05f05a8d5457 | 2024-02-03T11:42:d0v01:00 | withdrawal | outgoing | 0 | USD | 0.27570195 | BTC | 0.00 | | Cryptocurrency | 1 | 0.00000000 | BTC | | | 0.00 |
| F851e0d9-4ae5-41d2-b70c-61a04a0ccw | 2024-02-03T05:18:15v01:00 | deposit | incoming | 1786.01 | USD | | USD | | | Fiat | 1 | 63.07000000 | USD | | | 0.00 |
| T0d459444-0211-42c2-b0b6-7906bb7031c | 2024-05-03T03:35:4v01:00 | buy | outgoing | 1772.94 | USD | 0.05014076 | BTC | 44019.67 | USD | Cryptocurrency | 1 | 0.00000000 | BTC | | | 0.00 |
| Ccd5v3ee-07b0-4311-9f2d-1e0020c4ec | 2022-05-01T05:25:01v01:00 | withdrawal | outgoing | 0 | EUR | 0.05000076 | BTC | 0.00 | | Cryptocurrency | 1 | 0.00000000 | BTC | | | 0.00 |

Exhibit F – Identification of fraudster (Tammy Brooks)

**To: Consumer Financial Protection Bureau (CFPB)**
**Subject: Request for Investigation into Fraud and Involvement of Financial Accounts**

Dear Sir/Madam,

The following concerns are related to **COMPLAINT ID: 250405-19891496.**

I respectfully request that the **Consumer Financial Protection Bureau (CFPB)** initiate an investigation into the role of **Bank of America** in a fraudulent transaction, specifically involving the account holder **Tammy Brooks**. I kindly ask that the following information be verified

**Tammy Brooks' Account** – I request a thorough investigation into the Bank of America account registered under the name **Tammy Brooks**, including transaction history, and whether this account is still being used for fraudulent purposes.

I made an investment of **€1,000 EUR** (approximately **$1,155.81 USD** at the time), transferred between **October and December 2021** from my Dutch **Rabobank account** to an account under the name of **Tammy Brooks** at **Bank of America** (Account Number: **334060316768**, SWIFT Code: **BOFAUS3N**). This payment was made under the pretense of an investment, but no return or service was ever received.

This transaction is part of a larger fraudulent network. I urgently request confirmation that this payment can be traced, and that all accounts associated with **Tammy Brooks** are examined in connection with suspected fraudulent activity. I also request that immediate action be taken to recover and return the funds.

Please note that this matter is also part of a broader case currently being submitted to **judicial authorities**, involving multiple individuals suspected of participating in this fraud scheme.
I respectfully urge the CFPB to take swift and decisive action in this case, and to keep me informed of any progress made in the investigation.

Sincerely,
Inge Van Hees
inge.van.hees@proton.me

# Exhibit G – Summary of Network Structure of Fraudulent Domains

## 1. Centralized Network of Fraudulent Entities

- Total entities identified: 91
- Number of connections (links): 200
- The network analysis ranks domains, IP addresses, and nameservers by inbound and outbound links.

## 2. Key IP Addresses & Infrastructure

- Two dominant IPs used repeatedly:
• 172.67.196.6
• 104.21.21.29
→ Both linked to Cloudflare (CLOUDFLARENET), based in San Francisco, USA.
- Cloudflare usage: Indicates the use of a content delivery network to obscure true server origins and identities.

## 3. Suspicious Hosting via 'Alienhost'

- Nameservers repeatedly used:
• ns1.alienhost.co.uk
• ns2.alienhost.co.uk
→ These were used 47 times across fraudulent domain setups.

## 4. Top Fraudulent Domains (most inbound links)

- mo.va.ontropic.cyou
- pla.numfinanceltd.com
- millbulfiga.gq
- pokemon3dsgo.altervista.org
- microautomated.com
- gm-companion-dev.rophil.lol
- digitalgamesmetro.com
- cnspvf.ru.com
- WestGateOp.ons.com – directly involved in the plaintiff's case

## 5. Individuals Linked to the Network

- Joseph Tochukwu Ihemekwa
• Emails: josephihemekwa@gmail.com, josephchuks26@yahoo.com
• Phone numbers: +234 706 672 1094, +234 805 876 5370
• Referenced in multiple domain registrations and listed on fraud alert websites (stop419scams.com).

## 6. Locations & Origin

- Hosted mainly in the USA (via Cloudflare), with WHOIS records referring to Wakefield, UK (Alienhost).
- Numerous domains were active only briefly between 2022–2023, typical of fraudulent operations.

## 7. Evidence of Structure and Coordination

- Demonstrates a clear and repetitive infrastructure using the same IPs, nameservers, and domain providers.
- The rapid creation and disappearance of domains shows premeditated scam techniques.
- Indicates a centralized and deliberate setup targeting unsuspecting users through deception and anonymity.

Exhibit H – Formal complaints to FinCEN

I am writing to request your (legal) assistance in pursuing a damages claim against Binance, due to its role in facilitating a cryptocurrency fraud carried out via the platform WestGateOptions.com.

In 2022, I invested substantial amounts through that platform, which later proved to be fraudulent. My crypto assets were transferred via Binance and subsequently lost. Despite repeated efforts, Binance failed to respond meaningfully to my inquiries, which has contributed significantly to both financial and emotional harm.

Over the past three years, I have conducted extensive personal research and gathered detailed documentation, including transaction records, communications, and the identities of involved individuals—one of whom has previously been convicted of fraud in the U.S.

I've reported this case to multiple agencies (including FinCEN, CFPB, FMA UK, Kifid, and others) and even contacted media outlets and public offices. However, no effective support or compensation has resulted.

Response FinCen

Good day, Thank you for contacting the Financial Crimes Enforcement Network (FinCEN). We have received your inquiry but unfortunately this is not a matter we are able to assist with. If you need to report a crime or believe that you have been a victim of a financial scam or fraud, you should report this information to your local law enforcement authority. Additionally, you may visit the following link to the Consumer Financial Protection Bureau (CFPB) website, which contains resources for detecting, preventing, and reporting fraud and scams. https://www.consumerfinance.gov/consumer-tools/fraud/

complaint against Binance through the portal of CFPD

Here is what follows

What happened?

Description of what happened: In February 2022, I became a victim of fraud involving a SSN scam company, which was facilitated through Binance.US. The fraudulent actors misled me into providing

personal and financial information and encouraged me to deposit funds into my Binance.US account, specifically for transactions through Binance.US. Later, I discovered that the funds were unlawfully diverted, and I was unable to recover them. Despite my efforts to report the fraud to Binance.US, they did not respond appropriately, and their customer service failed to assist in resolving the situation or recovering the funds. Actions taken: I contacted Binance.US customer support multiple times since September 2024 to report the fraudulent transactions and request assistance in recovering the funds. I escalated my complaint to higher management, but received no significant action or support. I have filed a formal complaint to financial institutions and have contacted media outlets, legal authorities, and other relevant bodies to expose this scam. Company's actions: Binance.US failed to take adequate action to prevent the fraudulent activity and did not provide sufficient support in resolving the issue or recovering the lost funds. Their response to my inquiries was nothing and unhelpful. Additional Information: I have detailed records of all transactions, communications, and relevant information regarding this matter. I am prepared to provide these details upon request, should further clarification be needed to identify the fraud or to help with the investigation.

What would be a fair resolution to this issue?

1.Full Refund or Compensation: Request a full reimbursement for the funds lost due to the fraud facilitated through their platform. If this is not possible, ask for an alternative form of compensation that can fairly address the financial damage caused by their negligence. 2.Investigation and Action: Ask Binance.US to conduct a thorough investigation into the fraudulent activities that occurred through their platform, and provide a detailed report of their findings. Additionally, request that they take appropriate actions to prevent similar incidents in the future, such as enhancing their fraud detection measures. 3.Accountability: Ask for an acknowledgment from Binance.US that they failed to respond appropriately to your concerns and that they are taking accountability for their lack of action in handling your case. 4.Public Statement or Apology: Request a public statement or apology from Binance.US, acknowledging the negligence and fraud that occurred on their platform and their failure to protect users. 5.Preventive Measures: Request that Binance.US implements stronger safeguards and anti-fraud measures to protect other users from similar issues in the future. This could include better verification systems, monitoring for suspicious activity, and improved communication channels for users to report fraudulent activities.

Attachment: Inge Van Hees - ADR Protocol Letter to Binance.pdf

Returned by company

**Status**

Company responded the complaint does not belong to them on 5/3/2025

The company responded that they are not the appropriate company to address your issue.

The CFPB will review your complaint to see if we can determine the appropriate company. We will contact you if we need more information.

Closed

**Status**

Contact another agency

After our review, we found that the best agency to help you with your issue is Financial Industry Regulatory Authority. If you would like to submit your complaint with Financial Industry Regulatory Authority, contact them directly at or call .

full complaint to Bank of America

What happened?

Subject: Request for Investigation into Fraud and Involvement of Financial Accounts Dear Sir/Madam, I respectfully request that the Consumer Financial Protection Bureau (CFPB) initiate an investigation into the role of Bank of America in a fraudulent transaction, specifically involving the account holder Tammy Brooks. I kindly ask that the following information be verified Tammy Brooks' Account – I request a thorough investigation into the Bank of America account registered under the name Tammy

Brooks, including transaction history, and whether this account is still being used for fraudulent purposes. I made an investment of €1,000 EUR (approximately $1,155.81 USD at the time), transferred between October and December 2021 from my Dutch Rabobank account to an account under the name of Tammy Brooks at Bank of America (Account Number: 334060316768, SWIFT Code: BOFAUS3N). This payment was made under the pretense of an investment, but no return or service was ever received. This transaction is part of a larger fraudulent network. I urgently request confirmation that this payment can be traced, and that all accounts associated with Tammy Brooks are examined in connection with suspected fraudulent activity. I also request that immediate action be taken to recover and return the funds. Please note that this matter is also part of a broader case currently being submitted to judicial authorities, involving multiple individuals suspected of participating in this fraud scheme.

What would be a fair resolution to this issue?

I am requesting a full investigation into the fraudulent international transfer of €1,000 EUR (approximately $1,155.81 USD) made from my Dutch Rabobank account to a Bank of America account in the name of Tammy Brooks. I seek: – Full reimbursement of the transferred funds – Confirmation of whether the account is still active and possibly used for fraud – Bank of America's cooperation with U.S. and international law enforcement in identifying any larger network behind the transaction – Accountability for any failure by the bank to detect or report suspicious activity at the time of the transaction

Attachment Tammy Brooks.pdf

**COMPANY'S INTERIM RESPONSE**

Bank of America is reviewing your inquiry. We require additional time to provide you a complete response. We will update the status of your inquiry on the portal with our response as quickly as possible.

Company responded

**Status**

Company responded on 5/6/2025

The company sent its response directly to you and provided a copy to the CFPB. It may take a few days for you to receive the company's response. To protect consumer privacy, the CFPB has not included the company's response in this consumer portal. You can contact the company at (302) 318-0180 x17017 about its response to this complaint.

Probably by next Monday My 13, 2025, I will receive the letter

Complaint against Binance

**YOUR COMPLAINT**

Dear Sir/Madam, The following inquiries are related to COMPLAINT ID: 250405-19891496. I respectfully request that you present the following question to Binance and compel them to provide a detailed response: • Okoro Tochukwu Joseph – Are there any Binance wallet accounts registered under the name Okoro Tochukwu Joseph, as there are indications that this individual may be involved in cryptocurrency-related fraudulent activities? Specifically, I would like to request the following clarifications from Binance: 1. Whether Okoru Tochukwu Joseph is the owner of one or more Binance wallet accounts. 2. Whether there are any connections between the mentioned accounts and the payments made, and whether these transactions could be linked to fraudulent activities? I kindly ask for your assistance in ensuring that Binance thoroughly investigates this matter and provides a complete and transparent response.

What would be a fair resolution to this issue?

1. Verification and Investigation: Confirmation from Binance and any other relevant parties on whether Okoro Tochukwu Joseph is indeed linked to fraudulent wallet accounts and transactions. A thorough investigation by both Binance and U.S. authorities into the larger network of fraudulent activities that these accounts may be connected to, and action taken against those involved. 2. Accountability and Corrective Action: Binance, as a platform, should implement stronger fraud detection mechanisms and a clearer dispute resolution process to prevent similar incidents from happening in the future. Any findings or actions taken by Binance should be shared with the relevant authorities to aid in ongoing investigations into fraudulent cryptocurrency activities. 3. Public

Accountability and Transparency: A commitment from Binance and relevant financial entities to publicly disclose any fraudulent activities that have been identified in this case and to provide information on how they are working to prevent future incidents. 4. Legal and Regulatory Enforcement: U.S. authorities, including law enforcement and regulatory bodies, should act on the findings and take legal action against individuals involved in the fraud, ensuring the application of justice

Attachment: subject.docx

What happened?

Subject: Dissatisfaction with the Rejection of Complaint ID 250501-20477724 and Request for Reopening Based on New Evidence Dear Sir/Madam, I was deeply shocked and disappointed to learn that my complaint (ID 250501-20477724) was rejected, along with the incomplete response that followed. I do not accept this rejection in any way, as significant new information has come to light that further highlights the gravity of this situation. Since my initial complaint, I have obtained crucial evidence that indisputably shows that Binance was not only aware of the fraudster's involvement but also failed to take appropriate action due to either negligence or deliberate disregard. New evidence indicates that the entities and networks operating through Binance are intentionally involved in a fraudulent scheme, with the fraudster at the center. This is not a theoretical claim; it is a fact that can no longer be ignored. It is clear that Binance is involved in this case, whether through willful neglect or actual complicity. The rejection of my complaint cannot be accepted. I expect a thorough reassessment of the situation. Furthermore, I want to inform you that I am in consultation with legal counsel in the U.S. and will be pursuing legal action. This situation has become untenable, and this is my final attempt to resolve the matter through the CFPB. If no adequate action is taken, I will file my claim with the appropriate legal authorities. I demand that my complaint is not closed. This case is of too much importance to be dismissed. I will make no concessions and am prepared to take further legal steps. All relevant documents and information will be provided upon filing my lawsuit, including evidence that links Binance to the fraud. Additionally, I demand that Binance immediately freezes all wallets belonging to the fraudster and their accomplices. These individuals continue their fraudulent activities, and it is imperative that all financial transactions related to them are stopped to prevent further harm. I also demand that Binance take all necessary steps to prevent further fraud and immediately remove all involved parties from the platform. I expect a substantial response and action

from Binance within 7 business days. If no adequate response or action is received within this period, I will be forced to expedite my legal actions. If Binance fails to take appropriate action, I will not only pursue legal action through U.S. authorities but will also seek compensation for the losses incurred and the damages caused by this fraud. Additionally, I reserve the right to bring this issue to the public's attention, which could severely damage your platform's reputation. I strongly urge you to reopen this case and handle it with the seriousness it deserves.

Attachment: Top10.pdf

Exhibit H-2 – Formal complaints to FinCEN

# Formal Submission to FinCEN – Cryptocurrency Fraud Case

Date: May 09, 2025

Dear FinCEN Officer,

I am contacting you once more concerning an urgent matter involving cryptocurrency fraud facilitated via Binance.US, resulting in significant financial loss and emotional distress. Despite my previous outreach, I find myself in a loop of referrals between CFPB and FinCEN, with neither agency taking definitive responsibility for action or investigation.

## Background of the Fraud

In 2022, I was targeted by a well-organized fraudulent network operating through WestGateOptions.com, with Binance.US serving as the transactional platform. This fraud resulted in the loss of funds that were transferred via Binance wallets. Despite reporting the issue to Binance repeatedly, they failed to respond meaningfully or assist in any recovery efforts.

## Agencies Contacted

- FinCEN (initial response received – no jurisdiction claimed)
- CFPB (case submitted and closed; later referred me back to FinCEN)
- Bank of America (pending response regarding fraudulent account used)
- FMA UK, Kifid (Netherlands), legal offices, and media outlets
- I am also in the process of engaging U.S. legal counsel.

## Supporting Evidence

- Verified transaction records from Binance and bank transfers
- Names of individuals involved, including Okoro Tochukwu Joseph, a convicted fraudster
- A verified transfer to an account in the name of Tammy Brooks at Bank of America (€1,000 / ~$1,155.81), confirmed as part of the fraudulent operation
- Screenshots, PDF correspondence with Binance, CFPB, and Bank of America
- Evidence that the fraudster continues to operate actively

## Request to FinCEN

I respectfully request that FinCEN:
1. Reconsiders its previous position and treats this as a matter of international financial

crime under its purview.

2. Initiates a coordinated investigation into the use of Binance.US and Bank of America accounts to facilitate fraudulent international transfers.

3. Coordinates with other agencies (FBI, Interpol) and provides investigative support to bring these criminals to justice.

4. Accepts this document as an official initial report, and if further original documents or evidentiary material are required, I am prepared to deliver them immediately upon request.

## Attached Documentation

- Full CFPB complaint content and company replies
- Letter sent to Binance
- Response from Bank of America
- Proof of fraudster's conviction and activity trail
- Additional files with evidence, all cross-referenced

Please acknowledge receipt of this report. I strongly urge FinCEN to take this matter seriously, as the ongoing fraud is transnational and affects not only me but likely many other victims.

Sincerely,
inge Van Hees
inge.van.hees@proton.me

Exhibit I – Complaint to Financial Ombudsman Service against Skrill

**Ms. Inge van Hees**

koningin Wilhelminalaan 2A31 , 8051PA Hattem
inge.van.hees@kpnmail.nl
Ph: 31683153004

June 4th, 2022

**Financial Ombudsman Service**
Exchange Tower
London E14 9SR

URGENCY: **HIGH**
IMPORTANCE: **HIGH**

<u>**Skrill – BREACH OF DUTY OF CARE**</u>

Dear Sir/Madam of the Financial Ombudsman Service,

I am writing with regards to my complaint against Skrill, Firstly, I would like to emphasize that the stress and the pressure associated with being a victim of highly sophisticated scams have taken an enormous toll on me.

On or about <u>**January 17, 2022,**</u> I entered into an investment contract with "West Gate Options" using my "Radobank" and through my Skrill account to transfer 23,497.00 USD. I transferred my hard-earned money under the instructions of the scammers and paid them out to West Gate Options's representatives, thinking that I am engaging a legitimate investment firm, however, West Gate Options have taken my funds and failed to repay the money to me upon request.

Once I advised Skrill of this fact on April 01st, 2022, and didn't receive a satisfactory response.

This, of course, brings forth a plethora of inevitable queries with regard to the robustness of their organization's compliance with statutory and/or regulatory anti-financial crime risk management systems, policies and procedures.

I would like to emphasize here that I want my case to cover other essentials such as Duty of Care (**BSI PAS: 2017 17271**), Good Industry Practices (**FSA June 2012**), **FCG 2015**, which I have explained herein.

My complaint is against Skrill that did not do its job properly (could not prevent/foreseen fraud and could not conduct a proper investigation) and not against the vulnerable customer who fell victim and lost all the savings due to the misconduct of Skrill.

Given the circumstances, I am convinced that expecting Skrill to have foreseen the fraud that was perpetrated upon me is not to impose an unrealistic or too high degree of care, but rather what is required by law. Skrill had many reasons to anticipate that such an event was happening in the

context of those transactions. I am entitled to assume that my money would be carried by responsible financial institutions who would be aware of its safety and that my money would be carried with ordinary care.

In providing its services to me, the *Bank is required by law to exercise the care and skill of a diligent, prudent Bank*. In this case, this means the Bank should not turn a 'blind eye' to known facts pointing to a real possibility their customer (myself) is being scammed. In other words, the Bank must have had special knowledge of what was occurring or been alerted to a real possibility of fraud taking place. Bank reasonably ought to have known I was sending money to a scammer and alerted me. I am certain that had they done so I would not have lost all that I did.

**I have, since this time, done a considerable amount of research on this field. I would like to refer to the numerous laws, regulations and good industry practices applicable at the time of the transactions which Bank failed to uphold. These laws set out my views as to how Bank could have intervened to prevent the fraud;**

The British Standards Institutions' **PAS 2017 17271**, or **- The Code of Practice -**, the code was published on 31 October 2017 and sets out some key principles for businesses to work to in the detection of fraud and financial abuse.

The Code gives recommendations to organisations (Bank/payment facilitators) for protecting customers from financial harm that might occur as a result of fraud or financial abuse; and gives guidance on how to recognise customers who might be at risk, how to assess the potential risks to the individual and how to take the necessary actions to prevent or minimise financial harm.

It establishes that, as a general principle, the organisation should deliver a service that: **3.1(b)** takes a proactive approach to minimising risks, impact and incidences of financial harm and it sets out systems and tools for the prevention and detection of fraud and financial abuse.

As a general point, it says organisations should ensure that all systems are developed using technologies and methodologies that are effective in the prevention of fraud and financial abuse, through authorised and unauthorised payments, thereby minimising the risk of financial harm to customers.

As regards the detection of fraud and financial abuse, **the Code at 5.3.1**. says that organisations should have measures in place across all payment channels and products to detect suspicious transactions or activities that might indicate fraud or financial abuse. It then lists the following examples of suspicious activity on customer accounts, (those relevant to my case are in **bold**):

- multiple cheque books;
- **sudden increased spending;**
- **transfers to other accounts;**

- multiple password attempts;
- logins from new devices, multiple geographical locations;
- **sudden changes to the operation of the account; a withdrawal or payment for a large amount;**
- **a payment or series of payments to a new payee;**
- **financial activity that matches a known method of fraud or financial abuse**

**The Code at 5.4.2. sets out that organisations should have a process in place to ensure that staff make contact with the customer to verify the financial activity, challenge its authenticity, explain the nature of the suspected or detected fraud and discuss an appropriate plan of action.**

1. **"*Firms also have a longstanding regulatory duty to take reasonable care to establish and maintain effective systems and controls for countering the risk they might be used to further financial crime*" (SYSC 3.2.6R, which has applied since 2001).**
2. **'*Financial crime: a guide for firms – Part 1: A firm's guide to preventing financial crime*' which consolidated FCA guidance on financial crime based primarily on its predecessor's thematic reviews. - April 2015.**
3. **The Financial Conduct Authority (from April 2013) and its predecessor the Financial Services Authority, has issued a series of papers setting out examples of good and poor practice found when reviewing measures Banks take to counter financial crime, including:**

**The FCG 2015 contained examples of good and bad practices around investment fraud. Good practice included:**

- *'A Bank regularly assesses the risk to itself and its customers of losses from fraud, including investment fraud, in accordance with their established risk management framework. The risk assessment does not only cover situations where the Bank could cover losses, but also where customers could lose and not be reimbursed by the Bank. Resource allocation and mitigation measures are informed by this assessment.*
- *A Bank contacts customers if it suspects a payment is being made to an investment fraudster.*
- *A Bank has transaction monitoring rules designed to detect specific types of investment fraud. Investment fraud subject matter experts help set these rules.'*

**I've therefore thought about how Bank could have used industry intelligence as a way of monitoring transactions and suspected that she could have fallen victim to investment fraud. The 2012 paper suggested several sources available to building up a 'watch list' for investment fraud, referencing 'boiler room fraud', for the purposes of transaction monitoring. Examples included:**

- *'Intelligence from the FSA or City of London Police about unauthorised businesses or the names of suspect shares.*
- *Intelligence from other Banks e.g., from the Banks' boiler room forum.*

- *Lists published on the FSA website of UK and overseas unauthorised businesses.*
- *Lists published by other organisations e.g., the International Organisation of Securities Commissions publishes an 'Investor Alert' list on its website covering a number of different jurisdictions.'*

**Examples of good practice in the June 2012 investment fraud paper included:**

- *Real-time payment screening against a well-formulated watch list; transaction monitoring rules designed to detect specific types of investment fraud;*
- *Banks actively contacting customers if suspect payments are identified;*
- *Banks placing material on investment fraud on its website;*
- *Work to detect and prevent investment fraud being integrated with a Bank's vulnerable customers initiative.*

The FSA also explained that: '*we have a regulatory remit to tackle investment fraud, which has prompted our particular interest in this area, although the lessons of this report can be applied to Banks' handling of other types of fraud and criminal conduct affecting their customers.*' The quoted paper was primarily about investment fraud, which applies to my claim.

## The Banking Protocol and BBA best practice note
According to UK Finance's toolkit, financial businesses commit to:

- Look out for any unusual or out-of-character withdrawals and to implement the Banking Protocol procedure when such transactions are identified.
- Discreetly question the customer about the withdrawal or transaction and their reasons for making it, keeping in mind that the customer may have been told they are helping to catch a corrupt Bank employee and may have been given a cover story to tell if asked about the transaction.
- Consider the responses provided by a customer against what they expect normal activity on that customer's account to be. If they are concerned or suspicious that the customer may be the victim of fraud, they should notify a senior member of staff, who should take the customer to a quiet area and ask further questions to establish more details.
- If the senior member of staff believes the customer is a victim of fraud, either as a result of the answers provided or through their general behavior, they should call the Police immediately. The Police will then come to the branch and speak to the customer.

Conclusion

I wanted to convey to the FOS that the combined impact of the scams and then the traumatic experience has left my life in tatters and my health severely affected.

On the basis of this, I maintain that Skrill should refund all transactions that I have lost through the scams, plus 8% interest (from the date of the transaction to the date of reimbursement).

Yours sincerely

*Inge van Hees*

Exhibit J – Complaint to FMA against Bitpanda

**Mrs. Inge van Hees**

**Austrian Financial Market Authority (FMA)**
Otto-Wagner-Platz 5
A-1090 Vienna

**May 13, 2022**

**This is to complain against the Bitpanda.**

URGENCY: HIGH
IMPORTANCE: HIGH

### [WITHOUT PREJUDICE]

I wish to practice my right as a customer of Bitpanda to use your organisation's service, seeking a formal, impartial investigation to settle my dispute with Bitpanda amicably,

I find it baffling and reprehensible that Bitpanda failed to protect me, which calls me to defend my rights.

In order to straighten out the myriad of letters and correspondences I have hitherto sent to Bitpanda respecting my complaint, I believe it will substantially strengthen both my case and your understanding, by taking a deeper look at the happenings in my case, and analysing the relevant facts in an objective and comprehensive fashion.

In the first place, it is crucial to note that I have been manipulated, socially- engineered and coerced to engage these fraudulent criminals. Much to my embarrassment I recognize I was a victim of an investment scam.

My complaint to the FMA has arisen as I do not consider, by any stretch of the imagination, the conduct of Bitpanda to be commensurate with their legal role and responsibility to their customers. They sell a service to look after their customers, protect their money and are a financial institution that maintains a traditional relationship and way of working with its customers.

In the complaints process with Bitpanda, I found their communication ineffective, which further hides their conduct to management and diminishes their service offering to their clients. They are struggling to adapt their business offering in the ever-changing world of IT development. The internet is presenting a real problem which they chose to manage in a way which is not in line with rules and regulation of FMA and their own internal policy and procedures sold to their clients.

**Background:**

Commencing on or about **January 17, 2022**, I fell victim to two multi-layered scam operations run by **West Gate Options** which involved me making deposits for a total amount of **1.44078637 BTC** from my Bitpanda account to these fraudulent investment companies.

Due to personal circumstances, I was particularly vulnerable during this period; I was also relatively financially illiterate and very inexperienced in the finance sector which made me a prime target for criminal enterprises in this field. Details of my case can be found in the attached documentation.

**General Obligation:**

When determining what's reasonable and fair, we shall focus on the issue of liability; Common queries include, but are not limited to, the following (i) whether Bitpanda did not take notice of any rule, law, or regulation, and/or possibly missed any material elements of the relevant bylaws or codes of conduct, that may have prevented them from protecting my financial safety; (ii) whether by virtue of Bitpanda's custodianship over my funds or by its control over them, they owed a fiduciary duty to the myself and if so, whether that duty was breached; (iii) whether Bitpanda promoted the transaction(s) in question despite being aware of the nature of the transaction(s) in question (iv) whether Bitpanda were in compliance with its own policies and procedures; (v) whether Bitpanda owed duties to myself, what the scope of those duties were, and whether Bitpanda did not uphold those duties; (vi) whether Bitpanda's conduct was unfair; and (vii) whether Bitpanda has within its power the ability to, and should, compensate me for the harm that has befallen me.

It is incumbent upon financial institutions to carefully assess all information available about their customer, including vulnerability, needs and customer type. There is a wide range of transactions which, although legitimate, should raise a red flag simply because they are inconsistent with the customer's typical and ordinary activity. What constitutes *"reasonable grounds"* to flag transactions varies according to the facts and circumstances of the particular matter being investigated and the effectiveness of the anti-fraud processes.

Upon identification of such unusual or suspicious activity, it is crucial that the relevant staff member adequately describe the factors making an activity or transaction suspicious, thoroughly depict the extent and nature of this activity and properly communicate to the customer that such activity meets the relevant criteria of fraud.

In this case, this means the payment service provider should not turn a 'blind eye' to known facts pointing to a real possibility their customer (myself) is being scammed. In other words, Bitpanda must have had special knowledge of what was occurring or been alerted to a real possibility of fraud taking place. The financial institution must have known or reasonably ought to have known I was dealing with a scammer.

Granted, there is room for diversity of view insofar as "reasonableness" is concerned. Indeed, there is a sense in which the standard of care of the reasonable person involves in its application a subjective element. However, it must be remembered that the correct test is always "reasonable care" in all the circumstances, not "average" care. *"The fact that most people behave in a certain way may be good*

*evidence that the conduct is reasonable, but this is not necessarily the case."* Although 'reasonableness' is a very fluid concept, all the evidence suggests that Bitpanda did not foresee the fraud and disregarded even the most obvious dangers in this respect. Situations do tend to repeat themselves and it is advisable to look at previous outcomes to see how the standard of the reasonable person should be applied, and lessons can be learnt from the errors of the past.

### Bitpanda's Position:

On **April 28, 2022**, Bitpanda wrote in a letter *"we are sorry to hear about the unpleasant situation you are going through. We are here to help in any way we can. However, in this situation, we have limited avenues available as cryptocurrency transactions cannot be reversed or recovered. The person in control of the address the cryptocurrencies are currently on, is now the only one who has access and can send them back. If the person cannot be found or refuses to return the cryptocurrency, there is no way to get it back.".*

### Refuting Bitpanda's arguments from a purely logical perspective:

Bitpanda's position is that the features of the situation at hand do not generate a genuine obligation to protect innocent and helpless victims; they are essentially arguing that common-sense-based approaches are doomed to fail, leaving their exclusively technical account of the subject matter as the only meaningful choice. For reasons which are unclear, this extremely serious situation barely gets the attention it deserves even though ample evidence has been offered in support of this complaint.

In Bitpanda's view, it is implied that we shouldn't home in (and consequently rely) on unwritten laws, practicality, good judgement, reasonableness, sharpness, sensibleness, past outcomes, and insight, when taking appropriate precautions. *"If it looks like a duck, swims like a duck, and quacks like a duck, then it probably is a duck"* profusely illustrates my point. To underscore, once again, such views are at odds with common sense, wildly irresponsible and dangerously out of whack.

Imagine a view according to which the one and only thing that can make Bitpanda morally obligated to do something is having it written down somewhere. Pursuant to this view, if Bitpanda encounter suffering of totally naive victims, they're only obligated to intervene in or remedy the situation, to the degree required by written material. This is unbecoming for a reputable establishment such as Bitpanda.

I've reviewed the material hereto sent by Bitpanda carefully, and it unfortunately provides no response to my fundamental argument concerning the degree of care. Given its size and influence, this establishment clearly had the capacity and resources far greater than the customer of my size to determine the level and likelihood of risk that a client like myself is subjected to and was under a duty to intervene as they now do to query transactions in particular out-of-pattern transactions of this kind.

It is perfectly obvious that Bitpanda, inadvertently, employs a subtle approach in addressing some of the key questions in a manner which neither provides me with adequate support nor protects anything but its interests.

It is Bitpanda here, who has the burden of proof, to show that they've exercised the duty of care, that is to say, that Bitpanda adhered to a standard of reasonable care in relation to the matter at issue given its extensive experience compared to mine. It is Bitpanda that claims that the damages which I've suffered in connection with this matter have not been reasonably foreseeable, and that my proposed degree of care is not, and hasn't been, commensurate with Bitpanda's capacity, experience, expertise, or scope of services

in any way. To reemphasize, Bitpanda's indisputable overriding purpose is by no means to purely execute transactions in a blind and blank fashion, but rather to strike a balance between executing those transactions and capitalizing on its undeniably vast capabilities to protect consumers and enhance market integrity.

Apropos the fluidity of the concept of reasonableness, all Bitpanda have done in this regard is set up a dichotomy of *having or not having* the legal obligation under consideration, however, that doesn't go one-inch toward explaining why various regulatory authorities, such as the FCA, maintained that financial institutions can, and should, protect consumers using their systems, advanced technologies, and rich experience.

As a general principle, the organisation should deliver a service that: 3.1(b) takes a proactive approach to minimising risks, impact and incidences of financial harm and it sets out systems and tools for the prevention and detection of fraud and financial abuse. As a general point, it says organisations should ensure that all systems are developed using technologies and methodologies that are effective in the prevention of fraud and financial abuse, through authorised and unauthorised payments, thereby minimising the risk of financial harm to customers.

As regards the detection of fraud and financial abuse, the Code at 5.3.1. says that organisations should have measures in place across all payment channels and products to detect suspicious transactions or activities that might indicate fraud or financial abuse. It then lists the following examples of suspicious activity on customer accounts, (the application examples are in **bold**):

- multiple chequebooks;
- **sudden increased spending;**
- **transfers to other accounts;**
- multiple password attempts;
- logins from new devices, multiple geographical locations;
- **sudden changes to the operation of the account;**
- **a withdrawal or payment for a large amount;**
- **a payment or series of payments to a new payee;**
- **financial activity that matches a known method of fraud or financial abuse**

The Code at 5.4.2. sets out that organisations should have a process in place to ensure that staff make contact with the customer to verify the financial activity, challenge its authenticity, explain the nature of the suspected or detected fraud and discuss an appropriate plan of action.

I also quote the Payment Services Directive (II) (EU) 2015/2366 on payment services in the internal market (Payment Services Directive 2 – PSD2) entered into force on 12 January 2016 and applies since 13 January 2018. One of the objectives of PSD2 is to ensure the security of electronic payments and 'to reduce, to the maximum extent possible, the risk of fraud' (recital 95).

Payment Services Directive 2: in order to safeguard clients' interests, the payment service provider reserves the right to block a payment instrument – typically for objectively justified reasons related to the security of the payment instrument or the suspicion of unauthorized or fraudulent use of the payment instrument;

This Directive aims to ensure continuity in the market, enabling existing and new service providers, regardless of the business model applied by them, to offer their services with a clear and harmonized regulatory framework. Pending the application of those rules, without prejudice to the need to ensure the security of payment transactions and customer protection against demonstrable risk of fraud,

Directive 2 ( on safeguards and corrective measures )

(b)the secure procedure for notification of the payment service user by the payment service provider in the event of suspected or actual fraud or security threats; - was not upheld
(c)the conditions under which the payment service provider reserves the right to block a payment instrument; - was not upheld.

(Article 68 of PSD 2)Page 94

2. In the framework contract, the payment service provider may reserve the right to block the payment instrument for objectively justified reasons relating to the security of the payment instrument, the suspicion of unauthorized or fraudulent use of the payment instrument or,

3. In such cases the payment service provider shall inform the payer of the blocking of the payment instrument and the reasons for it in an agreed manner, where possible, before the payment instrument is blocked and at the latest immediately thereafter, unless providing such information would compromise objectively justified security reasons or is prohibited by other relevant Union or national law.

The payment service provider shall unblock the payment instrument or replace it with a new payment instrument once the reasons for blocking no longer exist
Security of electronic payments is fundamental for ensuring the protection of users and the development of a sound environment for e-commerce. All payment services offered electronically should be carried out in a secure manner, adopting technologies able to guarantee the safe authentication of the user and to reduce, to the maximum extent possible, the risk of fraud.

Transaction-Risk Analysis (TRA)

18.By contrast, and although the reporting of data under the category of 'fraud by manipulation of the payer', the EBA is of the view that such fraud cases are caused by a third party manipulating a payer into making a payment and that it is, the responsibility of the PSP to identify any such potential case. This is particularly the case with regard to the use of transaction monitoring systems, and in particular TRA. This is of particular concern to the EBA, given that this type of fraud has significantly increased in recent years, suggesting that fraudsters may be shifting to this modus operandi. Therefore PSPs and CAs will need to report data to this category alongside data in the category of unauthorized transactions.

Bitpanda are yet to show, or otherwise provide me with, a compelling argument that their wide-ranging experience and wealth of specialist knowledge in detecting transactional anomalies were not sufficient to avert the fraud at issue. By contrast, I have provided a multitude of sound and powerful reasons by which requiring their involvement has not only been pressingly relevant but also eminently reasonable and well-justified.

Rather than empathizing with and undertaking substantial efforts to convey their knowledge of the existence of such regulations abroad and thereafter use it to protect and proactively relieve the plight of consumers who have been cheated out of their money and whose role in society is properly fulfilled, positively contributing to local economic growth, development and sustainability – Bitpanda adopts a rather insouciant attitude toward my financial predicament portrayed herein.

I am deeply convinced that the disastrous results on which I've previously elaborated would continue to ensue if no responsibility is adopted by Bitpanda in relation to this matter. I've also thoroughly detailed why they cannot simply dismiss this problem by strictly and adhering to legal technicalities which, after careful reflection, struck me as being nothing more than self-interest. Indeed, it seems to me utterly unfair to disregard fragile, sensitive, and vulnerable consumers who are afflicted by such allegedly malevolent acts, thereby keeping an unjust status-quo that is corrupting our society at its deepest level.

**Conclusion:**

Based on my analysis, and as confirmed by various authorities concerned with such matters, there is abundant evidence that forward-thinking financial institutions ought to take reasonable steps to forestall fraud, or at least mitigate its risk by using an effective risk management system, demonstrating their undisputed ability to responsibly and pre-emptively respond to questionable transactions in the digital arena. The use of such systems, largely based on newly adopted technologies aimed at effectively navigating the evolving threat landscape, is only one of a number of possible endeavours undertaken in this connection, alongside the application of past knowledge and experience related to popular fraudulent practices.

Astonishingly, I am pondering how it is that, despite being shown that Bitpanda's business conduct was insufficient insofar as background checks are concerned, they keep refuting their indisputable role and responsibility in connection with the matter herein discussed. The points I've hitherto made are too crucial to be taken lightly. Bitpanda's non-observance for the fundamental principles of justice – that is, to completely overlook and not even remotely trying to mitigate the suffering of vulnerable consumers– is inexcusable given the resounding success and enormous wealth of Bitpanda as an establishment.

If it was, indeed, solely my responsibility, we must then believe at least one of the following: a) financial institutions have absolutely no role whatsoever in preventing and detecting fraud, b) the fraud in question was not reasonably foreseeable, and c) the transactions in question were not sufficiently alarming. It is extremely unfortunate that Bitpanda pushes quite hard for me to believe all three of these things—despite evidence to the contrary.

In summary, I respectively ask your organization to consider my points above and below, given your personal and companywide obligation to provide a fair and reasonable investigation into the complaint.

I look forward to your inputs and would gladly cooperate to reach a fair and reasonable outcome.

*Inge van Hees*

***THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK***

Exhibit K – Legal response from defendant (Binance)

 **BINANCE**.US

BAM Trading Services Inc. d/b/a Binance.US
252 NW 29th Street
10th Floor, Suite 1014
Miami, FL 33127
www.Binance.US

May 23, 2025

**VIA EMAIL (inge.van.hees@proton.me)**

**Re: Response to Formal Demand for Compensation and Legal Accountability – Crypto Fraud Involving Binance.US Platform & Final Notice of Default and Intent to Initiate Civil Action**

Dear Mr. Inge Van Hees,

I write to you on behalf of the Complaints Team within the Legal Department at BAM Trading Services Inc. d/b/a Binance.US ("BAM Trading") in response to the above referenced demand letters received via email on May 13 and May 21, 2025 (the "Letters"). To address the concerns outlined in the Letters, BAM Trading provides the following response:

First and foremost, BAM Trading confirms that you have never registered a BAM Trading account, as we do not offer our products or services in The Netherlands. As such, you have never deposited U.S. Dollars ("USD") or cryptocurrency, nor have you conducted any transactions on the BAM Trading platform. Additionally, BAM Trading has thoroughly investigated the allegations outlined in the Letters and found no records or activity on our platform related to the alleged international crypto fraud network or scheme to which you fell victim. To reiterate, there is no information on the BAM Trading platform regarding the alleged scam or the alleged scammers whom you identified in the Letters.

As we have previously communicated in our responses to the multiple Consumer Financial Protection Bureau ("CFPB") complaints you have submitted, it appears you are confusing BAM Trading with Binance Holdings Limited ("Binance" or "Binance.com"). It is essential that you understand that **BAM Trading** and **Binance.com** are *entirely separate* and *distinct legal entities* with *no shared corporate structure*, offering services in different geographic markets and operating independently of each other. BAM Trading is a Florida-based Delaware corporation operating exclusively in the United States, and we permit only residents of certain U.S. states or territories to transact on our platform. We encourage you to review the list of supported and unsupported states and regions published in our Help Center, accessible via our mobile app and website. To further support our position, the licenses we hold at both the federal and state levels are publicly available through our mobile app or website under the "Licenses" section. In light of these details, BAM Trading has no records or data related to Binance.com, nor can we provide information on any activities potentially associated with their platform or user base. Therefore, we strongly advise directing any inquiries regarding Binance.com to their support portal at https://www.binance.com/en/chat.

Furthermore, please pay close attention to the fact that BAM Trading is neither a named party nor subject to the Financial Crimes Enforcement Network Consent Order attached to your

May 13, 2025, email. As explicitly stated on the first page of that attachment, the named parties in the matter are Binance Holdings Limited, Binance (Services) Holdings Limited, and Binance Holdings (IE) Limited, d/b/a Binance and Binance.com, which excludes BAM Trading Services Inc., d/b/a Binance.US. Again, BAM Trading is not subject to the referenced Consent Order, as that Order pertains exclusively to Binance.com, and BAM Trading is not—and never has been—a party to it.

BAM Trading takes fraud prevention and consumer protection seriously and is fully committed to upholding the highest standards of compliance with all applicable federal and state laws, regulations, and industry best practices. As part of our ongoing efforts to combat fraudulent activity across the industry, BAM Trading proactively collaborates with law enforcement agencies by offering direct assistance and tailored training. The public-private partnerships we foster are essential to accelerating investigations, enabling coordinated responses to emerging threats, and facilitating the exchange of critical information that protects consumers and strengthens the integrity of the cryptocurrency ecosystem. BAM Trading confirms that we fully cooperate with law enforcement when contacted and actively support their efforts to detect, investigate, and prevent illicit activity.

We regret that you have fallen victim to a scam. However, we want to be clear: BAM Trading, as a regulated digital asset marketplace operating under U.S. regulatory guidelines, has no affiliation with any illicit third-party entities referenced in your Letters, nor does it have any record of transactional activity related to the fraudulent scheme described in your correspondence. Accordingly, BAM Trading disclaims any and all liability. We trust this response provides clarity regarding the situation. We have thoroughly addressed your concerns and do not intend to engage in further correspondence on matters outside BAM Trading's scope of responsibility or jurisdiction. BAM Trading reserves its right to amend the foregoing response should it obtain new information or documents which materially affect the substance thereof.

Sincerely,

Legal Department
BAM Trading Services Inc. d/b/a Binance.US


Exhibit L – Letter to Alienhost (fraudulent domains)

*To:* **NS1-Alienhost.**

June 05, 2023

*Re: Fraud/Abuse Report: Official Notice of Demand to Disclose Information*

**For negotiation purposes only, without effect as to any and all rights**

Dear Sir/Madam,

You are hereby notified that I have been targeted by and fallen victim to a multilayered scam operation orchestrated by a company named "West Gate Options" (the "Company"). As a consequence, I've been conned out of my hard-earned monies, totaling **23,497.00 USD**. **The Company has been utilizing your services, under domain name: "ns1.alienhost.co.uk"**

## About the Scam

Masquerading as a legally authorized entity, the Company hired, managed and trained personnel and collaborated with others as accomplices to their crimes to induce fraud that resulted in my financial and psychological damages. These include, but are not limited to, the following allegations, all of which are criminal, non-regulated, and malicious activities:

1. The Company directed and instructed others to work from shell companies that were operating from various unassociated places across the globe.
2. The Company opened bank accounts in multiple countries and used them through their accomplices and strawmen from around the world to conceal and disguise the identity of illegally obtained proceeds so that they appear to have originated from legitimate sources.
3. The Company intentionally committed fraudulent misrepresentation, and falsified its agent names, credentials, competencies, qualifications and location. The Company's name is merely a brand name, officially owned by shell corporations located offshore. In reality, the entire operation is being conducted from elsewhere (supposed location is evidently fictitious), and on top of that the call center, marketing, and decision making, are all being performed by completely anonymous and hidden entities. **Concealing true identities and utilizing front companies as a vehicle for a wide spectrum of financial maneuvers, is a notorious practice of criminal organizations.**
4. The Company blatantly violated international laws, as it has been practicing without a license and funneling enormous sums of money, through countries and jurisdictions that require registration to operate.
5. The Company provided direct investment advice - not utilizing 3rd party recommendations (e.g. "according to Bloomberg TV/Investing.com")
6. The Company offered **investment services/advice** not related to real market/exchange data (manufacturing false charts etc.). The trading platform was purposely manipulated, in a way that each client would ineluctably and unknowingly lose money, as the existence *itself* of the trades was made-up. By extension, the Company's staff and its accomplices simply pocketed the money, using it to purchase various luxurious, non-essential items, including exotic cars, gadgets, jewelry, drinks, accessories, cosmetics, fragrances, and watches.

7. The Company used a broad range of misleading tools, including videos advertising "free software that would help investors generate vast wealth swiftly and easily" to entice their targeted audience, irrespective of the fact that no software existed capable of producing the promised results. They also placed dozens of advertorials that ran on social media websites and videos featuring paid actors posing as authentic and genuine investors "enjoying rich lifestyles purportedly achieved by trading" as well as fabricated demonstrations of the fictitious software and trading accounts in action. Such tactics may also include the use of logical fallacies, psychological manipulations, outright deception, rhetorical techniques, and often involve the suppression of information or viewpoints by crowding them out, by inducing potential investors to stop listening to certain arguments from regulators, or by simply diverting attention elsewhere in the event suspicions arise.

8. The Company prohibited my ability to withdraw my funds.

9. The Company was guaranteeing returns/yields (unrealistic ones).

10. The Company furnished me with bonuses - which are not allowed to be given.

11. The Company was trading on my behalf (use of remote control of my computer).

12. My money was not held in a segregated account.

13. The Company did not advertise/disclosed/was not transparent regarding the statistical data representing the percentage of total client losses at the company.

14. The Company did not mention the commission and overnight swaps.

15. The Company did not read the risk disclosure prior to my deposit(s).

16. The Company used high pressure tactics and outbursts, which took a severe toll on my physiological health as I suffered major weight loss and illness as a consequence.

17. Armed with my personal details, the Company's staff seduced me, until I transferred all my savings to them. They utilized their knowledge of my cultural context, which stressed square and honorable business dealings along with honesty, to maliciously take advantage of my trusting nature.

18. To add insult to injury, various unethical techniques were used and aimed at influencing my system of values, principles, beliefs, emotions, motives, reasoning, and behavior. These include, inter alia, passive aggression (e.g. they made me feel unjustifiably guilty for my losses), intimidation, demoralization, diversion, evasion, and mistruths; all of which were used to con me into obeying them, thus lose more money. They bullied me to such an extent that they gradually shifted from keeping calling me even when I asked them to stop (prior to my deposits), to deliberately brushing me off by actively ignoring my requests and e-mails right after they realized they could no longer embezzle my funds.

Please take notice that my funds were transferred **through means of coercion and under false pretenses all along!**

## Further points for consideration

Scrutiny shows that the global internet community was fully cognizant of the Company's criminal nature during the period covered by this report. Nevertheless, it is plausible to assume that neither preventive nor proactive measures have been taken from your end to protect the public from this fraud; Practically speaking, effective steps to prevent bad actors from taking advantage of future victims (or at least to minimize this possibility) are abundant:

- The use of automated and human review of web hosting provision and traffic patterns to identify cyber-crimes and common fraudulent schemes in specific;
- Human review of complaints from the public and law enforcement about rapidly-growing, recurring, and popular fraudulent practices or illegal use of web hosting services, including creating special channels for such complaints;
- Cross-checking warnings, notices, cautionary announcements, and reports about websites suspected to be associated with cyber-fraud from governments, central banks, regulatory bodies, law enforcement agencies, watchdogs, and various whistle-blowers.
- Artificial Intelligence & Cyber-power: embrace and leverage Machine Learning technologies and Big Data Analytics to identify fraudulent, or potentially fraudulent websites by scrutinizing publications and reports about such websites in the digital sphere (e.g. on forums, social media, et cetera.)
- Revising your terms of service to reserve aggressive enforcement for the illegal use of websites; and
- De-registration of the website cited above, and any holds in place on registering new related contents, or similar blockers that prevent rapid registration of related contents.

## Demand for Disclosure

The individuals who directed and enjoyed the fruits of these illegal and unlawful activities shall be exposed in full. This means that any and all contextual documents and/or information at your disposal shall be disclosed in a timely and equitable manner, in a reply to this letter. **I hereby demand that you disclose the following:**

**Reports, instructions, transmittal letters, statements, notices, and other documents, related to the relevant participants and beneficiaries, whether involved directly or indirectly, in accordance with the applicable regulations and guidelines. It also includes the correct and true names of the parties to the lawsuit, their ID NO., address, and telephone number, as well as information and documents of any potential party or of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case, including information and documents concerning their beneficiary bank accounts, if available.**

I base my demand on the following grounds:

- Firstly, your organization's service agreements anticipate that you will be sued for misuse of web hosting, including financial abuse and fraud similarly to the conduct described above, and require parties to their respective agreements to indemnify against such claims.
- Moreover, you have irreparably harmed me and, if not enjoined, will continue to irreparably harm other victims of the Company and their various associates and loved ones. You have irreparably harmed the general public and, if not enjoined, will continue to irreparably harm the general public, which has an interest in being free from confusion, mistake, and deception.
- It is also well-established that in case of fraud, you shall take all reasonable steps to help victims of malicious activities as the above-described activities, extract valuable data that may lay the groundwork for future investigation, prosecution or out-of-court settlement.
- Finally, logic dictates that any service agreement of a credible, trustworthy and sound web hosting provider shall state (more than once) that it will cancel the operation of a domain name if the latter is alleged to commit fraud or if it receives valid evidence of such fraud. Presently, your organization have unfairly profited from the alleged fraud, because of which I have suffered actual damages.

In the event of non-compliance with the demand mentioned above, your organization, knowingly or unknowingly, manifestly jeopardize its business through its association with the Criminals: Those who are not direct accomplices to the commission of a crime but rather are permissive of the criminal behavior after the crime has been committed can also be charged with a crime. Being permissive, even if not present when the crime was committed, by not reporting the crime to the authorities and not trying to do your part in remedying the situation, makes you an accessory to the crime. If you unknowingly assist criminal behavior and remain impartial after discovering such, you are seen as obstructing justice.

If you will show me that you are capable of taking responsibility, by providing me with the relevant information and documents indicated and **bolded** above, I will be sure to let it be known. Positive feedback such as the kind of feedback I can give your organization, can propagate far and wide. Please consider my demands carefully, as a lot more can be gained by both sides as a result. I would prefer to resolve this matter with you directly, without the involvement of a third party, however, please be warned that I have thus associated with various lawyers in your country and elsewhere, and am prepared to bring this forward in the relevant jurisdiction to require compensation for all damages caused (plus accrued interest and legal costs).

## Conclusion

In light of the abovementioned and without derogating any of my rights, I hereby demand that you provide me with the relevant information and documentation to compensate for the actual damages as well as emotional and psychological damages suffered as result of these egregious actions. **Hence, I require complete disclosure no later than seven (7) business days from today.** If the disclosure is not declared within this time frame, I will commence an onslaught of legal proceedings and pursue every legal remedy available both in your country and abroad, and seek damages to the full extent of the law.

This letter does not realize the full extent of my claims, rights, and remedies against you or any of your affiliates, parents and subsidiary corporations, including, without limitation, your representative managing partners, officers, directors, shareholders, employees, agents, attorneys, assigns, successors, servants, insurers, and representatives, in any matter whatsoever, including the present context of this letter, as that will not detract from my rights and claims in any form or manner whatsoever, or constitute any concessions on my behalf against you and against others.

Regards

Inge van Hees

Exhibit M – Closure letter from external case support, May 15, 2025



Date: 15/05/2025

Client Reference: [350694]

Dear Inge van Hees,

After a thorough and careful review of your case and the journey we shared so far, we've come to a difficult decision.

With deep regret, we must let you know that the Company will be concluding our active work on your case at this time.

Please know this decision hasn't been made lightly. It reflects the collective consideration of all the teams who have been part of your case and devoted to the joint fight for your lost funds.

## Considerations

From the very beginning, our team approached your case with genuine dedication and pursued relentlessly every path available to us in the hope of achieving a resolution in your favor.

Despite our best efforts, we've now reached a point where we have exhausted all viable options within our current capacity. This conclusion stems primarily from significant resource limitations, which have made it increasingly difficult to maintain the level of support your case deserves.

In truth, the efforts, both in time and costs, have far exceeded the initial engagement. Nonetheless, up until this point, the team continued the work driven purely by commitment to helping you seek justice, and we hope you recognize that, as well.



On a different note, another discouraging aspect has been the persistent lack of cooperation from the financial institutions and regulatory bodies involved.

Despite repeated and genuine attempts to engage with them and reach an agreement that would result in reimbursement of your stolen funds, we were met with their resistance to cooperate.

They have declined to participate in a way that would allow meaningful progress, and such a continuous lack of collaboration has ultimately left us at a standstill.

Finally, it's important to note that even after the expiration of the Agreement [nearly 4 years], our team remained invested, continuing to advocate for your case. However, given the lack of institutional support and our current resource constraints, we're left with no other option but to stop further efforts.



## Conclusion

We want to reassure you that this outcome doesn't reflect the strength or worthiness of your case, nor does it diminish the commitment we've had to supporting you. It simply reflects the real-world limitations we've encountered, ones we deeply wish were not in our way.

Nevertheless, should there be any meaningful changes in the industry or a shift in the institutional cooperation that could reopen paths toward a resolution, we would be open to discuss revisiting your case.

Your issue remains important to us, and we will gladly reassess if new opportunities for resolution arise.

We are sincerely grateful for the trust you placed in us and for your patience throughout this process. It has been a privilege to work on your case.

If there is anything we can do to support you during this transition, please let us know.

Exhibit N – ADR Protocol Letter to Binance

September 20, 2024

*To:*  **Binance (your "Organization")**

**Via Email**

**[Without Prejudice]**
**[Based on Information and Belief]**

**Attn: Complaints/Fraud Dept.**

Dear Sir or Madam,

Re:  *Demand Letter — Fraud*

I hope this letter has correctly found itself within your complaints/fraud department as it is very essential to me that you become aware of the ordeal I have had to go through.

Commencing on or about January 18, 2022, I fell victim to a multilayered scam operation orchestrated by **West Gate Options** (the "Fraudsters" or the "Company"), with the design, development, manufacture, promoting, marketing, distribution, labelling, and sale of illegal and outright fraudulent "investment services", all of which aim at contributing to the goal of robbing and defrauding clients, through a predetermined cycle of the client's losses to their gains.

It should be noted that the Company is a client of yours and the owner of the wallets:

**1FtcioqXoCF6kujjniqAABeebjJbLYmNfq**

that utilized your services to launder the money, as the following transactions can verify it:

1. Transaction hash:

**64a10c775090db80ecb6232ed9e6f5b94490ef751bded22d6cfa8f68dfd2fd8f**

2. Transaction hash:

**a81f1b8df24e1b2734df68a00c9f9764a38c0e3658fca66ea48e0a3241bb1e1b**

3. Transaction hash:

**64785cb4f8260556f0c16536b7c675ca17f8ba622108a07c7f71fd53a1a753d3**

You client is committing financial crimes right under your nose, which involve, among other things, stealing and laundering large sums of money regularly. Money was transferred from my "Bitpanda" wallet in the total amount of 1.440786 BTC utilizing your services and under your authorization.

This, of course, brings forth a plethora of inevitable queries with regard to the robustness of your organization's compliance with statutory and/or regulatory anti-financial crime risk management systems, policies, and procedures.

I never look backward except for learning, nor do I have a proclivity to blame others for my downfalls, however, I can't help but link this enormous loss with the trust I had instilled in your institution, a regulated one.

## OVERVIEW

- This letter shall thrust into the spotlight, inter alia, the increasingly important role financial institutions play in the fight against financial crime and fraud, and the pressing need for higher levels of supervision and vigilance within your organization.

- Here's an indisputable fact: Had you looked at the wider circumstances surrounding the above-referenced transaction(s), this illicit transfer of wealth could have been prevented.

- Obviously, there is no consensus with respect to the degree and scope to which regulated and licensed financial institutions must intervene and block suspicious transactions, and indeed, in so doing, financial institutions may often cause payments to be slowed down unnecessarily or even some legitimate payments may be rejected, however, please be noted that additional frictions such as slower payments (such as delaying payments or freezing funds to investigate) is beneficial to and welcomed by vulnerable customers and widely considered as a positive practice necessary to maintain market integrity and customers' financial safety, particularly for large-value and/or out-of-pattern payments.

- As demonstrated herein, you are undeniably an involved player in the scam's ecosystem, by providing the infrastructure which fraudsters exploit to make their scams more plausible. Responsible financial institutions shall be working hard and be committed to both the future of the market and the security of all customer funds. You must recognize that you play a critical role over the funds you hold as digital assets for your customers. Acting as a custodian shall require a high bar, including, but not limited to, appropriate security safeguards that are independently audited and tested on a regular basis,

- As set forth herein, your organization, by its conduct, evidently failed to perform adequate **"Anti-Money Laundering"** and **"Know Your Client"** (combined as **"AML/KYC"**) procedures, as those procedures are commonly known under the applicable guidelines and enforcement rules. Combined with appropriate safeguards, AML/KYC could have the potential to prevent the victimization described herein.

- Upon information and belief, the fraudsters liquidated cryptocurrencies through your services for FIAT money; however, the liquidated cryptocurrencies were not legitimately generated revenues. Instead, those cryptocurrencies were stolen through a sophisticated fraudulent scheme. Unbeknownst to myself and to the public, the fraudsters were misappropriating cryptocurrencies from innocent people while liquidating those cryptocurrencies through your services.

- Against this background, and without derogating any of my rights, I hereby hold you liable for financial and emotional harm as well as medical problems relating to this victimization and **demand** that you reimburse my account in full within 7 days from the date of this letter.

## INTRODUCTION

Financial crimes and fraud investigations often involve a high degree of sophistication, complexity, and sensitiveness to detail. Accordingly, this letter aims to address the issue at hand as profoundly and fairly as possible, by taking into consideration contextual regulations, laws, and bylaws, as well as guidance, standards and rules promoted by supervisory authorities, relevant codes of practice and (where suitable) what was good industry practice (GIP) at all times relevant hereto. The allegations contained herein are predicated either upon knowledge with respect to myself and my own experience, or upon facts obtained through investigations conducted by qualified third parties.

I strongly believe that substantive evidence in support of the allegations set forth herein will be found after an appropriate opportunity for discovery. Key facts supporting the allegations contained herein are known only to the Company or/and are exclusively within their control.

The Company cleverly orchestrated a prevalent scheme of deception to lead people to invest significant sums while knowing that those would-be investors would ultimately lose the money they had entrusted to it. The overall purpose of the scheme, in other words, was to target and defraud people who are often inexperienced and naive, in pursuance of illicit wealth through various fraudulent representations. **I did not know, and through the exercise of reasonable diligence could not have discovered, the fraud that was being perpetrated upon myself by the Company.**

Fraud is commonly conceptualized as withholding from the weaker party in financial transaction (e.g. an investor) information which is necessary to make an informed, rational or autonomous decision.

In this regard, even access to adequate information is insufficient to achieve complete autonomy. A complication here is that the weaker party, amateur/unseasoned investors in particular, might have trouble analyzing the data at hand sufficiently well to identify fraudulent schemes. Unfortunately, because financial products are often abstract and complex, there's no easy solution to this problem.

Therefore, full autonomy of investors might not only require access to sufficient information, but also access to relevant technologies, know-how, processing capabilities, and resources to analyze the information. **A reasonable solution is that financial institutions would be required to promote transparent communication in which they understand the business of its customers, and its legality.**

According to the Federal Trade Commission's interpretations of the terms "deceptive" and "unfair", the FTC has found that a "deceptive act or practice" encompasses *"a representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."*

The federal courts have defined a "deceptive trade practice"[I] as *any act or practice that has the tendency or capacity to deceive consumers* and have defined an "unfair trade practice" as *any act or practice that offends public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.*

The false representations and omissions made by the Company have a tendency or capacity to deceive consumers, such as myself, into unwittingly providing funds that fuelled the Company's fraudulent scheme and therefore are, by their very nature— immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers— all at once.

As a result of the Company's deceptive trade practices, I were deceived into transferring my funds for investment returns that were never delivered. The way the Company had their scheme rigged, I will certainly never receive any monetary value for the investments--thus causing significant economic damage to me. The false statements of material facts and omissions as described above; and the sham transaction(s) the Company perpetrated upon myself; were unfair, unconscionable, and deceptive practices perpetrated on me which would have likely tricked a reasonable person under the circumstances.

When determining what's reasonable and fair, we shall focus on the issue of liability; Common queries include, but are not limited to, the following: (i) whether you violated any rule, law, or regulation, and/or breached any material elements of the relevant bylaws or codes of conduct, in failing to protect the public's financial safety; (ii) whether by virtue of your custodianship over the funds or by your control over them, you owed a fiduciary duty to the public and if so, whether that duty was breached;

(iii) whether you promoted the transaction(s) in question despite being aware of the nature of business in question (iv) whether you were in compliance with your own policies and procedures;

(v) whether you owed duties to the public, what the scope of those duties were, and whether you breached those duties; (vi) whether your conduct was unfair or unlawful; (vii) whether you have been unjustly enriched; (viii) whether I have sustained damages as a result of your conduct; and (ix) whether you have within your power the ability to, and should, compensate me for the harm that has befallen me.

## MERCHANT'S FRAUD SCHEME — ALLEGATIONS

**The Company hired, managed and trained personnel and collaborated with others as accomplices to their crimes to induce fraud that resulted in my financial and psychological damages. These include, but are not limited to, the following allegations, all of which involve criminal, non-regulated, and malicious activities:**

1. The Company directed and instructed others to work from shell companies that were operating from various unassociated places across the globe.
2. The Company opened bank accounts in multiple countries and used them through their accomplices and strawmen from around the world to conceal and disguise the identity of illegally obtained proceeds so that they appear to have originated from legitimate sources.
3. The Company intentionally committed fraudulent misrepresentation, and falsified its agent names, credentials, competencies, qualifications and location. The Company's name is merely a brand name, officially owned by shell corporations located offshore. In reality, the entire operation is being conducted from elsewhere (the supposed location is evidently fictitious), and on top of that the call center, marketing, and decision making are all being performed by completely anonymous and hidden entities. **Concealing true identities and utilizing front companies as a vehicle for a wide spectrum of financial maneuvers, is a notorious practice of criminal organizations.**
4. The Company blatantly violated international laws, as it has been practicing without a license and funneling enormous sums of money, through countries and jurisdictions that require registration to operate.
5. The Company provided direct investment advice - not utilizing 3rd party recommendations (e.g. "according to Bloomberg TV/Investing.com")
6. The Company offered **investment services/advice** not related to real market/exchange data (manufacturing false charts etc.). The trading platform was purposely manipulated, in a way that each client would ineluctably and unknowingly lose money, as the existence *itself* of the trades was made-up. Instead, the Company's staff and its accomplices simply pocketed the money, using it to purchase various luxurious, non-essential items, including exotic cars, gadgets, jewelry, drinks, accessories, cosmetics, fragrances, and watches.
7. The Company used a broad range of misleading tools, including videos advertising "free software that would help investors generate vast wealth swiftly and easily" to entice their targeted audience, irrespective of the fact that no software existed capable of producing the promised results. They also placed dozens of advertorials that ran on social media websites and videos featuring paid actors posing as authentic and genuine investors "enjoying rich lifestyles purportedly achieved by trading" as well as fabricated demonstrations of the fictitious software and trading accounts in action. Such tactics may also include the use of logical fallacies, psychological manipulations, outright deception, rhetorical techniques, and often involve the suppression of information or viewpoints by crowding them out, by inducing potential investors to stop listening to certain arguments from regulators, or by simply diverting attention elsewhere in the event suspicions arise.
8. The Company prohibited my ability to withdraw my funds.
9. The Company was guaranteeing returns/yields (unrealistic ones).
10. The Company furnished me with bonuses - which are not allowed to be given.
11. The Company was trading on my behalf (use of remote control of my computer).
12. My money was not held in a segregated account.
13. The Company did not advertise/disclosed/was not transparent regarding the statistical data representing the percentage of total client losses at the company.
14. The Company did not mention the commission and overnight swaps.
15. The Company did not read the risk disclosure prior to my deposit(s).
16. The Company used high pressure tactics and outbursts, which took a severe toll on my physiological health as I suffered major weight loss and illness as a consequence.
17. Armed with my personal details, the Company's staff seduced me, until I transferred all my savings to them. They utilized their knowledge of my cultural context, which stressed square and honorable business dealings along with honesty, to maliciously take advantage of my trusting nature.
18. To add insult to injury, various unethical techniques were used and aimed at influencing my system of values, principles, beliefs, emotions, motives, reasoning, and behavior. These include, inter alia, passive aggression (e.g. they made me feel unjustifiably guilty for my losses), intimidation, demoralization, diversion, evasion, and mistruths; all of which were used to con me into obeying them, thus lose more money.

They bullied me to such an extent that they gradually shifted from keeping calling me even when I asked them to stop (prior to my deposits), to deliberately brushing me off by actively ignoring my requests and e-mails right after they realized they could no longer embezzle my funds.

Please take notice that my funds were transferred **without my permission!**

Attached, please find supportive statements, screenshots, and further evidence.

## EXPOSING YOUR ORGANIZATION'S MISCONDUCT

Having analyzed the circumstances surrounding the transactions in question, I hereby allege that your organization completely failed to adequately investigate the fraudster's accounts and willfully blinded itself to obvious red flags.

Many suspicions should have been arisen at your organization as an issue of great concern, with respect to the unusual, abnormal high volume of activity taking place in those fraudsters' account(s), who have probably laundered large sums of money under the radar. Despite the regulatory and statutory requirements your organization shall abide by as a licensed and regulated financial institution — and instead of detecting patterns, drawing certain conclusions, and taking actions accordingly— you at best, merely and insufficiently performed some hasty and haphazard review of the account(s) held by the fraudsters or maybe asked only a few trivial questions regarding the suspicious activities, and at worst, shut your eyes completely rather than being careful, methodical, and vigilant. Had you bothered, you would probably have realized those funds are associated with fraud and financial crime, rather than some other legitimate revenue/activity.

**The financial institution shall seek further information or/and documentation from the client in order to help create a proper KYC profile, and when the movement of large sums of money is concerned, to verify the legality and legitimacy of its sources.**

**In light of the above, and after conducting a comprehensive review, it became glaringly obvious to me that no adequate information or/and documentation were sought by your organization, at best, and at worst — no appropriate safeguards were implemented at all.**

If a financial institution received money knowing it to be *"dishonestly given, shutting its eyes to the obvious fact of the dishonesty or acting recklessly in failing to make such inquiries as an honest and reasonable man would make"*, it would be in breach of its AML/CTF/KYC, even if the payment was made on the surface in a legal manner (and as clearly shown, it wasn't) the financial institution would still be liable for damages in negligence.

Compliance departments should ensure that staff understand the legal requirements and that where there are suspicions, these suspicions must be communicated to all relevant personnel whilst they are investigated. Clearly, you have failed to request from the fraudsters a confirmation transaction to verify the veracity of their default position that they legitimately earned those monies.

For the avoidance of doubt, reasonable grounds shall not necessarily be interpreted as proof. **On the basis of various signs, you should have assumed that something 'fishy' was going on and suspended transaction(s) until you had made reasonable enquiries to satisfy yourself that the transaction(s) was/were properly to be executed.** In other words, I have been a victim of your negligence for facilitating the misappropriation of funds, and doing little to safeguard the public financial interests. Any reasonable staff member would have realized that there were *"many obvious, even glaring, signs"* that funds are being misappropriated and probably laundered (Singularis Holdings Limited (in liquidation) v Daiwa Capital Markets Europe Limited [2019] UKSC 50) [I].

Had you cursorily audited or reviewed the Blockchain history of the cryptocurrencies in question, it would have been transparent and beyond obvious to you that those transaction were not in any way a result of legitimate business dealings, but were rather generated from unlawful and criminal activities.

You knew or should have known that the funds being liquidated through your services did not rightfully belong to the fraudsters. Similarly, you knew or should have known that the assets being liquidated through your services were not profits earned in a legitimate and lawful fashion. Instead, you knew, or should have known, that the assets being liquidated through your services belonged to innocent investors and were being converted by criminals. You turned a blind eye to the crimes that you have facilitated and thus provided an array of essential liquidation services, acting as a vehicle, with the awareness that it was enabling the fraudsters to commit crimes and convert the victim's assets.

Your services undoubtedly served as a crucial element in the fraudulent scheme detailed herein, and you were either unaware of your complicity in the fraud, or at worst completely aware and silent. You knew that you should have disclosed and reported the fraudsters' activities to law enforcement authorities/agencies and regulators. However, to satisfy your financial interests, you conveniently closed your eyes, even though you undeniably had, at all material times, the necessary controls and resources to influence,
whether directly or indirectly, those particular transactions, and perhaps many others, which resulted in your primary violations of law.

You also had the duty to stop those crimes, yet you refused to do so because you were more interested in enriching yourself, even if it meant furthering those crimes and allowing them to cause massive financial losses to plenty of victims — many of whom suffered as a result of your wrongful conduct. **Therefore, it is clear that you did not have in place adequate security measures to properly safeguard the public assets — hence, you have irreparably harmed me and, if not enjoined, will continue to irreparably harm other victims and their various associates and loved ones. You have irreparably harmed the general public and, if not enjoined, will continue to irreparably harm the general public, which has an interest in being free from confusion, mistake, and deception.**

When discussing the responsibilities that a financial institution might incur, it is crucial not to forget the fact that a legitimate complaint by, or cause of action on the part of, an individual might generate/give rise to further statutory cause of action or/and additional responsibilities or liabilities owed by a financial institution to the relevant regulatory authority.
Obligations/duties owed by a financial institution to a regulator are distinct from those owed to the individual. On top of that, please remember you may owe liabilities to more than one regulator.

As a regulated and licensed financial institution, you have strict statutory and regulatory obligations to monitor client's transactions and report any suspicious activities to law enforcement authorities. The importance of implementing robust internal systems to detect and report money laundering and other suspicious activities has been continuously emphasized in the industry in addition to having the appropriate policies, procedures and internal controls in place to ensure ongoing compliance in respect of the aforementioned systems. **You should have analysed your client's activities and distinguish thereafter between what may be normal activity and that which might suggest an illegal enterprise.** This is a well-known standard industry practice which plays a substantial role in preventing criminals from liquidating and laundering customer's funds.

## FRAUD

Actual fraud can be described, inter alia, as *"suppression of that which is true, by one having knowledge or belief of the fact"*. Therefore, due to the fact that you knew or were grossly negligent in not knowing that those scams are thriving under your nose and should not be entrusted with those assets—you are liable for committing actual fraud and thus, are liable to myself for damages.

## UNJUST ENRICHMENT

By engaging in the conduct described herein, you, directly or indirectly, knowingly and/or with severe recklessness, in particular by not doing enough to properly verifying the legality of your clients' sources of income, have reaped the benefits from allowing the scammers to steal money from me and perhaps many others, thereby causing actual harm to a substantial amount of people. Retaining the said monetary benefits, as a result of your misconduct alleged herein, is unconscionable and against the fundamental principles of justice.

## VIOLATIONS OF INTERNATIONAL LAW

By reason of this misconduct, you violated, and if not enjoined will continue to violate, many of the international anti-fraud policies, which are established to facilitate the development of controls that will aid in the detection and prevention of fraud worldwide.

Your organization's blatant disregard of its obligation to adequately follow a KYC/AML procedure has caused significant, irreparable damage and injury to me. Much of it is so obviously a result of negligence or so easily subject to investigation that it is apparent that you misappropriated the assets either knowingly or with reckless disregard for whether these transactions are lawful or not.
You have an independent and non-delegable duty to conduct a reasonable investigation of any and all transactions and the failure to do so is a violation of law and the rights of those targeted by such negligence.

## AIDING AND ABETTING

By engaging in the conduct described herein, you, knowingly or recklessly, promoted transactions, practices, and courses of business which unquestionably operate as a fraud and deceit upon the purchasers and provided substantial assistance to the commission of financial crime. By engaging in the conduct described herein, which no doubt is a substantial factor in causing my injuries, you aided and abetted the fraudsters and if not enjoined, will continue to aid and abet violations.

As a direct, foreseeable, and proximate result of your wrongful conduct described herein, I have sustained and continue to sustain substantial injuries, which include, but are not limited to: **financial loss, humiliation, embarrassment, severe mental and emotional distress, and discomfort,** all of which amount to my damage which totals in excess of what I have transferred to the fraudsters in the first place.

## FURTHER POINTS FOR CONSIDERATION

It is well-established that a compensation obligation arises in the circumstances discussed above as contemplated by the standards, and that the regulated and licensed financial institutions, although haven't perpetrated the fraud themselves, should be uniquely placed in the role of an insurer, insofar as reasonable. Granted, the fraud has taken place entirely outside of the domain of the financial institution, but still, both common sense and methodological approaches to problem-solving suggest that the financial institution should have had the investigative powers, the know-how and the resources not only to prevent and detect this foreseeable fraud but also to discover the nature or merits of this claim, and when appropriate, reimburse the client. In the computer age, when access to technology and information is abundant, it is no longer exclusively a matter for law enforcement or government-led action.

Moreover, it is better to seek to protect users, increase costs for users and even decrease choice than to achieve a compromised protective environment and in doing so provide fertile ground for criminal organizations to flourish and enrich themselves.

Given that the recordings of all completed transactions on the Blockchain are publicly available, easily accessible, and fully transparent, for example, through https://www.blockchain.com/, it wouldn't be implausible to assert that you utterly failed to satisfy yourself that the cryptocurrencies being presented by the fraudsters actually derived from legitimate sources — as it could have been easily verified and flagged thereafter. Further, you should be aware of the tactics often utilized by fraudsters such as large movements of sums in a short period of time, thousands of micro-transactions to create a false sense of demand, tumblers, and mixers. Besides, you have routinely failed to exercise your clear, nondiscretionary, and indisputable duty to inquire and/or report if suspicious activities are involved in the movement of the digital funds; absent appropriate set of inquiries as to the legitimacy and legality of the transactions, fraudsters will continue to thrive in this common, fraud-heavy paradigm.

## FRAUD DETECTION SERVICES

It is clear that I was injured through the common misconduct described above and were subject to the fraudsters' unfair and unlawful conduct. It is also clear that everyone else in their right mind could also have been tricked under the circumstances, hence I suggest you adapt yourself, as a respectable and resourceful financial institution, to the rapidly-changing financial services technology environment. **If you are serious about fighting crime, you shall invest in fraud detection services, irrespective of whether or not it is expressly specified in the relevant regulatory requirements.**

Fraud detection services are often predicated on non-PII data (Non-Personally Identifiable Information) thus not robbing individuals of their anonymity. Instead, they utilize digital footprints and behaviour analysis.

**It is expected of firms to take action within the existing legislative and regulatory framework to *suspend or freeze* payments based on their risk assessment managing the risks of financial crime. The standards that financial institutions need to meet would include processes – such as use of technology, rules and procedures – that help prevent and respond to scams similar to the one described herein.**

Scrutiny shows that the global internet community, fully cognizant of the Company's criminal nature during the relevant time-period. Nevertheless, it is plausible to assume that neither preventive nor proactive measures have been taken from your end to protect my financial interests.

## CONCLUSION

**If you do not cooperate within 14 days from the date of this letter, a request for reimbursement of the lost amount, attorney's fees, filing fees, and any further costs associated with obtaining the refund amount may be pursued.**

If despite the credibility of this claim, you would take no steps to shut down the fraudster's operation or to expose the illegal activities to law enforcement authorities, you are obviously directly participating in a fraud.
 No matter how inexplicable and suspicious these transactions were, you executed each and every transaction, thus unlawfully generating immense profits from a fraud. In order to perpetrate the fraud, the criminals needed a financial institution that would be friendly and hospitable to scammers, in other words, an institution which would blind itself to and overlook suspicious activity, completely ignore the grossly excessive activities in their accounts, and conveniently ignore its obligations under the law. It was not reasonable, during the time the transactions in question were executed, for you to believe that the transactions were a result of anything other than misappropriation of the funds, especially in light of the fact that you were fully aware, at the relevant time period, that such scams are prevalent and could have done more to spot it before the money was handed over.

In the event of non-compliance with the demand mentioned above, your organization, knowingly or unknowingly, manifestly jeopardize its business through its association with the Criminals: those who are not direct accomplices to the commission of a crime but rather are permissive of the criminal behavior after the crime has been committed can also be charged with a crime. Being permissive, even if not present when the crime was committed, by not reporting the crime to the authorities and not trying to do your part in remedying the situation, makes you an accessory to the crime. If you unknowingly assist criminal behavior and remain impartial after discovering such, you are seen as obstructing justice.

This letter does not realize the full extent of my claims, rights, and remedies against you or any of your affiliates, parents and subsidiary corporations, including, without limitation, your representative managing partners, officers, directors, shareholders, employees, agents, attorneys, assigns, successors, servants, insurers, and representatives, in any matter whatsoever, including the present context of this letter, as that will not detract from my rights and claims in any form or manner whatsoeve Tekst constitute any concessions on my behalf against you and against others.

For more information, please reread.

Yours sincerely

Inge Van Hees.

## DEMAND FOR DISCLOSURE

The individuals who directed and enjoyed the fruits of these illegal and unlawful activities shall be exposed in full. This means that any and all contextual documents and/or information at your disposal shall be disclosed in a timely and equitable manner, in a reply to this letter.

Hence, I hereby demand that you disclose the following within 7 days from the date of this letter:

Reports, instructions, transmittal letters, statements, notices, and other documents, related to the relevant participants and beneficiaries, whether involved directly or indirectly, in accordance with the applicable regulations and guidelines. It also includes the correct and true names of the parties to the lawsuit, their ID NO., addresses, and telephone numbers, as well as information and documents of any potential party or of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case, including information and documents concerning their beneficiary bank accounts, if available.

# Exhibit O – Bank of America documentation

**BANK OF AMERICA** 〰〰
NC1-007-58-16
100 N. Tryon St.
Charlotte, NC 28255-0001

Complaint Response

INGE VAN HEES
KONINGIN WILHELMINALAAN 2A31
8051 PA HATTEM, NETHERLANDS

Date: May 6, 2025

Case Number:
250422CR1008537

Page 1 of 1

Correspondence received from: Consumer Financial Protection Bureau (CFPB) on: 04/22/2025

Inge Van Hees:

## I've carefully reviewed your correspondence and want to let you know our response.

### Here's our response

Thank you for speaking with us on April 25, 2025, regarding your concerns. At Bank of America, keeping information secure and confidential is one of our most important responsibilities. Please understand that our privacy policy does not allow us to disclose any details about accounts at Bank of America that you do not own. As such, we are unable to release any account information to you. We must direct your request to your bank regarding filing a claim to recover any funds back to your account.

### We're here to help

If there's anything else you need, please call me at 302.318.0187, extension 1730170, Monday through Friday, 8:00 a.m. to 4:30 p.m. Eastern.

Yari Garcia
Resolution Specialist
Regulatory Complaints

cc: Consumer Financial Protection Bureau / Case No.: 250422-20249935

Bank of America, N.A. is required by law to inform you that this communication is from a debt collector. If you are currently in a bankruptcy proceeding or have previously obtained a discharge of this debt under bankruptcy law, this notice is for informational purposes only and is not an attempt to collect a debt, a demand for payment or an attempt to impose personal liability for a discharged debt.

C3_13272_746715_10132022

Exhibit P – JP Morgan documentation (mule account)

**Account Holder: Paysafe Payment Solutions Limited**
**Bank Name: JP Morgan Chase - IE**
**IBAN: IE67CHAS93090379607763**
**Bank Address: Luxembourg S.A., 200 Capital Dock,**
**Dublin**
**Bank Country: Ireland**
**swift: CHASIE4L**
**bankDetailType_currency: EUR**
**Use reference number: 141382456**

Exhibit Q – SEC report and alias identification

**Subject:** Supplement to Complaint ID 250405-19891496 – Prior Criminal Conviction of Okoro Tochukwu Joseph

Dear Sir/Madam,

This message serves as a formal supplement to **Complaint ID: 250405-19891496**, concerning suspected fraudulent activity involving the individual **Okoro Tochukwu Joseph**.

I would like to inform you that this person has a known **criminal conviction** on record. According to public court documents in Nigeria (Federal Republic of Nigeria v. Okoro Tochukwu Joseph), he was **convicted in December 2020** for defrauding an American woman of **$15,000** through identity fraud conducted via online platforms.

The conviction was issued by the Enugu High Court in Nigeria, and included both a prison sentence and a restitution order via the Nigerian Economic and Financial Crimes Commission (EFCC). You can find the reference to this case here:
**https://v1.corruptioncases.ng/export/frn-vs-okoro-tochukwu-joseph-student-of**

This proven criminal background reinforces my suspicion that Binance wallet accounts under the name Okoro Tochukwu Joseph may have been used for fraudulent purposes — possibly including the $1,155.81 USD I transferred during the period of October to December 2021 as part of an investment scam.
I respectfully urge you to:
1. Request a full report from Binance as to whether Okoro Tochukwu Joseph owns or owned Binance accounts;
2. Investigate whether these accounts have been involved in suspicious or fraudulent activity;
3. Include this conviction as an aggravating factor when evaluating the level of due diligence Binance has applied in their KYC/AML procedures.

Thank you for continuing to investigate this matter. I trust this new information will help to uncover the broader scope of this fraud and prompt appropriate action.
Kind regards,
Inge Van Hees
inge.van.hees@proton.me
Linked to Complaint ID: 250405-19891496

Exhibit S – Overview of complaints and timeline

**Kifid (The Netherlands – Financial Services Complaints Institute)**
- **Complaint submitted:** 05-08-2022
  **Complaint ID:** 22.03179
- **Response received:** 31-05-2023 – Complaint denied
- **Remark:** The complaint concerned inadequate warning systems within financial institutions and their role in allowing suspicious transactions to proceed. The reasoning behind the rejection was considered vague and insufficiently substantiated.

**FMA Consumer UK (Financial Market Authority)**
- **Complaint submitted:** 22-05-2022
  **Complaint ID:** PNX-4496910-C4X2
- **Feedback received:** 04-07-2022
- **Follow-up request sent:** 21-07-2022
- **Decision:** 22-09-2022 – Complaint denied
- **Remark:** The FMA was notified of the involvement of third parties in fraudulent crypto transactions. The response was a general denial without substantive evaluation of the supporting evidence provided.

**VARA Dubai (Virtual Assets Regulatory Authority)**
- **Complaint submitted:** 01-02-2025
  **Complaint ID:** CMP-453304
- **Tracking request sent:** 04-02-2025
- **Follow-up tracking requests:** 10-02-2025 and 17-02-2025
- **Status:** No response ever received to emails with attachments
- **Remark:** The request called for immediate action. VARA's persistent silence raises serious concerns about its duty of care and regulatory oversight responsibilities.

**Police Report**
- **Filed on:** 19-12-2024
  **Report ID:** BVH 2024572627

**General Notes**
- Between 22-08-2022 and 02-04-2025, I was subjected to an extended scam campaign via email and international phone numbers.
  99% of the communications were in English; one email was in Dutch in which the scammer impersonated a government official.
- Since filing reports through official channels, all scam emails and calls have abruptly ceased. This suggests that my information may have been flagged or that enforcement action has had a deterrent effect.

**Evidence**
All relevant evidence (emails, phone numbers, call records, and attachments) is available in full upon request or within legal proceedings. The documentation is chronologically organized and can be provided digitally if necessary.

Exhibit T – Automated email from Binance.US

**Automated Email from Binance.US**
**Date generated: May 22, 2025**

**The automated email message below was received from Binance.US in response to a contact request by the plaintiff. It contains relevant information regarding the deficient customer service and the denial of responsibility for Binance.com accounts. This message is included as an exhibit in the civil complaint against Binance.US.**

Thank you for contacting Binance.US Support! We're here to help guide you on your crypto journey.
At this time, we do not offer direct support via email. If you have questions or need assistance, please visit our Support Center here, or by copying the direct link below:
https://support.binance.us/en
Please note: We are unable to provide any direct support for Binance.com accounts. For further assistance, we encourage you to contact their support team here.

Thank you for contacting Binance.US Support! We're here to help guide you on your crypto journey.
At this time, we do not offer direct support via email. If you have questions or need assistance, please visit our Support Center here, or by copying the direct link below:
https://support.binance.us/en
Please note: We are unable to provide any direct support for Binance.com accounts. For further assistance, we encourage you to contact their support team here.