UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Inge Van Hees, Plaintiff

v.                                                              Case No. 4:25-cv-05685-JST

BAM Trading Services Inc., Defendant            **PLAINTIFF'S OPPOSITION to MOTION to DISMISS**

**I. PRELIMINARY STATEMENT**

Defendants' Motion to Dismiss fails at the threshold. At this stage, the Court must accept Plaintiff's factual allegations as true and draw all reasonable inferences in her favor. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Plaintiff proceeds pro se, and her pleadings are held to less stringent standards than those drafted by attorneys. **Haines v. Kerner**, 404 U.S. 519, 520–21 (1972). The Complaint more than clears that bar.

The record is not conclusory. It is fact-laden and supported by over thirty exhibits: Exhibit A placed Defendants on explicit statutory notice under RICO, SEA, CEA, BSA, and Restatement § 876, while identifying convicted fraudster Okoro Tochukwu Joseph. Exhibit C, the FinCEN Consent Order, is a binding federal finding of willful BSA violations involving BAM Trading. Exhibits O and P document Plaintiff's funds routed through Bank of America and JPMorgan mule accounts. **Exhibits N-B** through N-D(7) establish Plaintiff's wallet exposure and continuity of the scheme into September 2025. Exhibits H, I, and J confirm Plaintiff's good-faith exhaustion of regulatory remedies.

Defendants' Motion is more notable for what it omits than what it argues. Their omission of these exhibits is not inadvertent—it is notable. They attempt to preserve a false narrative by ignoring notice, regulatory findings, banking records, and blockchain continuity. Courts in this District do not reward such tactics. See **Khoja v. Orexigen Therapeutics**, Inc., 899 F.3d 988, 1003 (9th Cir. 2018).

Moreover, Plaintiff did not rush to court. She pursued ADR (Exhibit N) and filed regulatory complaints with FinCEN, CFPB, and FOS (**Exhibits H**, I, J). Defendants' silence on these efforts makes their request for dismissal with prejudice especially disingenuous. In essence, Defendants ask this Court to dismiss a complaint they refuse to meet on the facts. That is not what Rule 12(b)(6) permits.

For these reasons, the Motion should be denied in its entirety. In the alternative, any dismissal should be without prejudice and with leave to amend, consistent with the Ninth Circuit's directive that leave must be granted with "**extreme liberality**." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

**II. JURISDICTION AND VENUE ARE PROPER**

This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1367. Plaintiff asserts federal claims under the Securities Exchange Act, the Commodity Exchange Act, the Bank Secrecy Act, the Federal Trade Commission Act, and related statutes. Venue is proper in this District because Defendant conducts substantial business here and maintained operations in California during the relevant period, as confirmed by Defendant's own declarations (Doc. 32-2). These facts establish both federal jurisdiction and proper venue.

As further detailed in **Exhibit S**, Plaintiff pursued remedies in multiple jurisdictions between 2022 and 2025, including complaints to Kifid, the Austrian FMA, and VARA. This consistent global complaint history underscores venue propriety and the transnational scope of Defendants' conduct.

**III. STATUTE OF LIMITATIONS: ONGOING CONDUCT DOCUMENTED**

Defendants contend that Plaintiff's claims accrued in March 2022 and are therefore time-barred. That argument fails under both law and fact.

1. **Exhibit N-B** establishes Plaintiff's own wallets and transactions connected to the disputed address 1FtcioqXoCF6kujjniqAABeebjJbLYmNfq.

**Exhibit N-B** includes the ADR Protocol Letter sent to Defendants, attaching blockchain data that links Plaintiff's transactions to address **1FtcioqXoCF6kujjniqAABeebjJbLYmNfq**, embedded within Binance's wallet cluster [0000011bd9]. This evidence shows Plaintiff's funds were routed into the same infrastructure that continues to operate to this day. (**Exhibit** N-B)

This evidence, drawn from WalletExplorer exports and blockchain data, shows how Plaintiff's funds were routed into Binance's mega-cluster [0000011bd9]. **Exhibit N**-B also contains the ADR Protocol Letter placing Defendants on formal notice. This exhibit ties Plaintiff's individual loss directly to the broader enterprise.

2. **Exhibits N-C** through N-D(7) demonstrate continuity. These exhibits trace the same cluster forward from September 2022 through September 2025, with balances increasing from approximately 89 BTC to more than 102 BTC. This trajectory demonstrates that the funds were not sent to an isolated or dormant address but into an ongoing infrastructure actively accumulating illicit proceeds.

Moreover, Defendants fail to confront controlling precedent. The Supreme Court has clarified in Rotella v. Wood, 528 U.S. 549, 553–54 (2000), that RICO accrual runs from discovery of injury. The Ninth Circuit further held in Grimmett v. Brown, 75 F.3d 506, 512 (9th Cir. 1996), that each new predicate act restarts the limitations period. Exhibits N-B through N-D(7) document precisely such continuing acts into September 2025. Defendants cite no case in which a RICO claim supported by ongoing predicate acts was dismissed as untimely. Their silence on this controlling authority is telling.

3. **Exhibit E** provides Bitpanda transaction statements from January–February 2022 showing Plaintiff's initial BTC inflows and outflows. These records establish the starting point of the fraud-related transfers and connect directly to the wallet addresses later traced in Exhibits N-B through N-D(7). By anchoring the first predicate acts in early 2022, Exhibit E further supports the timeliness of Plaintiff's RICO and fraud claims.

4. Exhibits O and P—records from Bank of America and JPMorgan Chase—show related U.S. mule account transactions extending into May 2025.

As detailed in Exhibit O, Bank of America explicitly documented the incoming transfer, while **Exhibit P** confirms that JPMorgan Chase processed a mule account transaction tied to the same fraudulent chain. Defendants' silence on these concrete banking records undermines their extraterritoriality defense.

These records anchor the scheme within the United States during the relevant limitations period.

5. **Exhibit A**—the Final Notice—references Defendants' statutory duties under the Racketeer Influenced and Corrupt Organizations Act, the Securities Exchange Act, the Commodity Exchange Act, the Bank Secrecy Act, and the Restatement (Second) of Torts § 876. It also identifies convicted fraudster Okoro Tochukwu Joseph, adjudicated in the United States in 2019, demonstrating a direct nexus between prior adjudicated fraud and the ongoing enterprise.

6**. Exhibit H-2** is Plaintiff's formal submission to FinCEN in May 2025, attaching additional blockchain evidence of ongoing fraudulent activity. This filing not only extends the timeline of regulatory exhaustion but also confirms that U.S. regulators were placed on notice of continuing predicate acts well within the four-year period.

7. Under controlling precedent, Plaintiff's RICO claims are timely. The Supreme Court has held that accrual runs from the discovery of injury, not from the first predicate act. Rotella v. Wood, 528 U.S. 549, 553–54 (2000). The Ninth Circuit further recognizes that each new predicate act restarts the clock. Grimmett v. Brown, 75 F.3d 506, 512 (9th Cir. 1996). Plaintiff discovered the extent of injury only after Defendants failed to engage in ADR (Exhibit N) and after regulatory complaints (**Exhibits H**, I, J) failed to yield redress.

Viewed collectively, **Exhibits N-B**, N-C–N-D(7), O, and P establish both origin and continuity of predicate acts well within the four-year RICO period. Defendants' statute of limitations defense therefore collapses as a matter of law and fact.

**IV. ARBITRATION / TERMS OF USE DO NOT BAR THESE CLAIMS**
Defendants rely on an arbitration clause in alleged Terms of Service. That argument fails for multiple, independent reasons:

1. **No BAM Trading Account**. Plaintiff never opened or maintained an account with BAM Trading Services Inc. Defendant cannot compel arbitration where no contractual relationship exists.

2. **Unconscionability**. Even assuming arguendo that the clause applied, it is procedurally and substantively unconscionable. See Armendariz v. Foundation Health Psychcare Servs., Inc., 24 Cal.4th 83 (2000).

3. **Fraud Vitiates Consent**. Contracts induced by fraud are unenforceable. Defendant cannot rely on Terms allegedly accepted in the very environment of deception it facilitated.

4. No Standalone Contract Claims. Plaintiff's Complaint asserts statutory and tort duties, not contract claims. There is no "contractual dispute" to which Defendant's arbitration clause could apply.

5. **Statutory and Tort Claims Are Non-Arbitrable**. Courts have held that arbitration cannot bar adjudication of statutory claims designed to protect the public. See McGill v. Citibank, N.A., 2 Cal.5th 945 (2017); Cordas v. Uber Techs., Inc., 228 F. Supp. 3d 985 (N.D. Cal. 2017).

6. **Public Policy**. The claims involve AML/KYC duties under federal law. Allowing such claims to be diverted to private arbitration would undermine congressional mandates.

7. Assent Is Disputed. Whether Plaintiff ever saw, received, or agreed to the alleged Terms is a factual question inappropriate for resolution on a motion to dismiss.

Accordingly, Defendants' reliance on arbitration is a dilatory tactic, not a valid defense. See **Fed. R. Civ. P. 1**.

**V. DUTY AND NO ACCOUNT**

Defendants claim that they owed Plaintiff no duty because she never held a BAM Trading account. This argument fails under the evidence before the Court of their own records, communications, and regulatory obligations.

1. Exhibits A and B establish notice and deliberate evasion. **Exhibit A** is Plaintiff's Final Notice, sent directly to BAM, referencing statutory duties under RICO, SEA, CEA, BSA, and the Restatement (Second) of Torts § 876.

Defendants may cite **Casey v. U.S. Bank**, 127 Cal. App. 4th 1138 (2005), for the proposition that mere inaction does not create aiding-and-abetting liability. But Plaintiff does not allege inaction. Plaintiff alleges knowledge (Exhibits A, N, H–J) and affirmative facilitation of fraudulent transfers (Exhibits C, F, O, P, N-B–N-D(7)). Under Casey, liability attaches where a defendant had actual knowledge of the wrongful conduct and provided substantial assistance. That is exactly what Plaintiff has plausibly pled.

As stated in Plaintiff's Final Notice: "You are hereby placed on notice of violations under RICO, the Securities Exchange Act, the Commodity Exchange Act, the Bank Secrecy Act, and Restatement (Second) of Torts § 876, arising from your failure to act on ongoing fraudulent transactions. This notice specifically identifies Okoro Tochukwu Joseph, convicted in the United States in 2019 for fraud." (**Exhibit A**)

**Exhibit B** shows that this notice was returned unopened—an intentional act of avoidance, not a lack of duty. Together, these exhibits demonstrate that Defendants were put on clear notice of Plaintiff's claims and chose silence.

2. Exhibits D, K, and T show BAM's legal department directly communicating with Plaintiff. In Exhibit D, BAM's Legal Department formally responded to Plaintiff. Exhibit K contains a written reply from Binance acknowledging Plaintiff's submissions. **Exhibit T** further reflects BAM's receipt of Plaintiff's filings. These documents prove that BAM did not treat Plaintiff as a stranger but as a party requiring response—demolishing the "no account, no duty" defense.

3. **Exhibit C**—the FinCEN Consent Order—establishes binding federal findings that Binance and its affiliates, including BAM Trading, willfully violated the Bank Secrecy Act. The Order cites failures in AML/KYC controls and integration across entities. Under the BSA, 31 U.S.C. § 5318, and FinCEN's findings, BAM owed a statutory duty to monitor transactions and prevent illicit use of its platform. Defendants' silence on **Exhibit C** is deliberate, as it destroys their narrative that duty arises only from account contracts.

4. the duty arises independently under tort law. The **Restatement (Second) of Torts § 876** imposes liability on parties who knowingly provide substantial assistance to wrongful conduct. Plaintiff's allegations, supported by Exhibits A, D, K, and T, demonstrate precisely such assistance and knowledge.

Defendants' "no account" argument is not supported by fact or law. Their silence on Exhibits A–D, K, T, and C is telling: these exhibits show BAM was on notice, engaged in direct communication, and bound by statutory duties.

Defendants' own Declaration (Miller, Doc. 32-2) admits that BAM conducted a "diligent search" for Plaintiff's account. That search itself is evidence of notice and engagement. A corporation does not search its internal systems and generate sworn declarations absent an asserted duty to investigate. Their attempt to spin this as "no account, no duty" is contradicted by their own actions.

Defendants' reliance on Casey v. U.S. Bank, 127 Cal. App. 4th 1138 (2005), is misplaced. In Casey, the bank lacked actual knowledge. Here, Exhibits A, B, D, K, and T demonstrate repeated statutory notices, direct legal correspondence, and deliberate evasion. Further, Defendants' own sworn declaration (Doc. 32-2) admits they conducted a "diligent search" of internal systems for Plaintiff's account. Such an investigation is not undertaken in the absence of notice and duty; it is evidence of recognition and engagement, not distance.

---

**VI. CORPORATE DISCLOSURES**

Defendants **cannot plausibly argue separateness** between BAM Trading and Binance.com. In their own **Rule 7.1 Disclosure Statement** (Doc. 27), BAM Trading admits it is **wholly owned by BAM Management US Holdings, Inc**. That entity, in turn, is **controlled by BAM Management Company Limited, CPZ Holdings Limited, and Changpeng Zhao**, each holding more than a five percent interest.

5

Defendants further acknowledge that "**BAM Trading Services, Inc. is a platform that allows United States-based users to buy, sell, and trade cryptocurrencies**." These admissions, made pursuant to Rule 7.1, directly undermine Defendants' position that BAM Trading operates independently and without connection to the broader Binance structure. Their own disclosures confirm the overlap of ownership, control, and purpose, **making dismissal on grounds of corporate separateness implausible.**

**The Court should reject Defendants' duty defense in full.**

### VII. FRAUD IS PLEADED WITH PARTICULARITY

Plaintiff has satisfied **Rule 9(b)** by alleging who, what, when, where, and how. Exhibits A–T provide names, dates, bank rails, wallet addresses, and transaction hashes. Courts must construe pro se pleadings liberally. Haines v. Kerner, 404 U.S. 519 (1972).

The Complaint is supported by detailed factual evidence. It identifies specific actors (e.g., Okoro Tochukwu Joseph), financial institutions (Bank of America, JPMorgan Chase), blockchain evidence (**Exhibits N-B**–N-D(7)), and regulatory findings (Exhibit C, FinCEN Consent Order). Viewed collectively, these allegations exceed the Rule 9(b) standard and easily meet plausibility under Twombly and Iqbal.

### VIII. COMPLAINT STATES PLAUSIBLE CLAIMS

Under Twombly and Iqbal, Plaintiff must allege facts that make claims plausible, not merely possible. Plaintiff has done so:

1. Negligence and aiding/abetting fraud under **Restatement (Second) of Torts § 876**(b);
2. RICO predicate acts under 18 U.S.C. § 1961;
3. Violations of federal consumer and financial statutes, including the SEA, CEA, BSA, and FTC Act.

The Complaint weaves one coherent narrative arising from interconnected conduct, not isolated incidents. See Johnson v. Riverside Healthcare, 534 F.3d 1116 (9th Cir. 2008). Defendants' failures to implement AML/KYC controls amount to substantial assistance and encouragement of the fraud. These facts make Plaintiff's claims both particular and plausible.

Even if the CFPA affords no independent private right of action, its provisions and enforcement framework remain probative of statutory duties. See 12 U.S.C. § 5564(g)(1). Plaintiff invokes the CFPA not as a standalone claim, but as evidence of federal policy and duties relevant under RICO and Restatement § 876. Defendants' attempt to excise this statutory context ignores its relevance to the duty analysis.

**IX. OPPOSITION TO DEFENDANT'S REQUEST FOR JUDICIAL NOTICE**

Defendants seek judicial notice of their Terms of Service. Judicial notice under **Fed. R. Evid. 201** is limited to facts not subject to reasonable dispute. Whether Plaintiff was bound by these Terms is hotly contested. The Ninth Circuit forbids using judicial notice to resolve disputed facts. See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001); Khoja v. Orexigen Therapeutics, 899 F.3d 988, 999 (9th Cir. 2018). The request should therefore be denied.

**X. RICO: ENTERPRISE AND PREDICATE ACTS**

Defendants argue that Plaintiff has not plausibly alleged an enterprise or a pattern of racketeering activity. That assertion is belied by the record, which Defendants strategically ignore.

1. **Exhibit C**—the FinCEN Consent Order—constitutes a binding federal finding of willful Bank Secrecy Act violations.

The Consent Order expressly found that "Binance and its affiliates, including U.S. operations, willfully violated the Bank Secrecy Act by failing to implement and maintain adequate AML and KYC controls, resulting in billions of dollars in illicit transactions." (**Exhibit C**)

The Order confirms systemic failures in AML and KYC controls across Binance and its affiliates, including BAM Trading. FinCEN's findings are dispositive: they identify the enterprise structure, the continuity of operations, and the facilitation of illicit transactions. Defendants' silence on **Exhibit C** is deliberate, because acknowledgment of this Order destroys their claim of separateness.

2. Exhibits F, O, and P provide documentary evidence of U.S.-based predicate acts. Exhibit F links fraudulent transactions to Bank of America mule accounts. Exhibit O contains Plaintiff's records showing funds routed through Bank of America. **Exhibit P** reflects JPMorgan Chase transactions tied to the scheme as late as May 2025. These records establish that the enterprise operated through U.S. financial institutions—squarely within the jurisdiction of this Court.

3. **Exhibit G** documents the network structure of 91 fraudulent domains operated through Cloudflare and Alienhost, forming part of the infrastructure used to launder Plaintiff's funds. This evidence demonstrates the enterprise's scope, sophistication, and reliance on U.S.-based internet infrastructure. The inclusion of Exhibit G further confirms that the racketeering enterprise was neither isolated nor dormant, but part of a coordinated global structure with a domestic nexus.

4. Exhibits Q–R identify convicted fraudsters and known operatives of the scheme. Exhibit Q names Okoro Tochukwu Joseph, convicted in the United States in 2019 for fraud, while **Exhibit R** provides corroborating material linking him to the WestGateOptions/Donald Wood operation. The association of convicted actors with the infrastructure to which Plaintiff's funds were funneled confirms the existence of a racketeering enterprise with continuity and purpose.

5. Plaintiff's blockchain evidence (**Exhibits N-B**–N-D(7)) provides independent confirmation of continuity. The cluster into which Plaintiff's funds were routed has remained active through September 2025, accumulating over 102 BTC. This constitutes ongoing racketeering activity under 18 U.S.C. § 1961.

6. Controlling precedent supports Plaintiff's RICO claims. At the pleading stage, a plaintiff need only allege facts supporting the existence of an enterprise and continuity of predicate acts. See Haines v. Kerner, 404 U.S. 519, 520–21 (1972) (pro se pleadings held to less stringent standards); Rotella v. Wood, 528 U.S. 549, 553–54 (2000) (accrual rule); **Grimmett v. Brown**, 75 F.3d 506, 512 (9th Cir. 1996) (continuing violations).

Viewed collectively, Exhibits C, F, O, P, Q, R, and N-B–N-D(7) establish both the enterprise and the pattern of racketeering activity. Defendants' silence on these exhibits confirms that their motion is not grounded in fact but in deliberate omission. Plaintiff has plausibly alleged RICO claims, and dismissal is unwarranted.

Defendants' enterprise argument likewise fails. The Supreme Court in Boyle v. United States, 556 U.S. 938, 946 (2009), held that an "enterprise" need not have formal hierarchy or structure; an association-in-fact suffices where members function together for a common purpose. Exhibits C, Q–R, and N-B through N-D(7) document precisely such an association-in-fact enterprise: actors, infrastructure, continuity, and purpose. At the pleading stage, this is more than sufficient.

**XI. SECURITIES AND COMMODITIES**

Defendants argue that Plaintiff's securities and commodities claims are extraterritorial and conclusory. Their position fails under the evidence before the Court of the record and governing law.

1. Exhibits F, O, and P anchor this case in the United States. Exhibit F documents transactions funneled through Bank of America mule accounts. Exhibit O contains Plaintiff's records confirming transfers routed through Bank of America, while **Exhibit P** details JPMorgan Chase transactions extending into May 2025. These exhibits prove that Plaintiff's funds entered and circulated within the U.S. financial system—establishing a domestic nexus squarely within the reach of the Securities Exchange Act and the Commodity Exchange Act. As detailed in Exhibit O, Bank of America explicitly documented the incoming transfer, while **Exhibit P** confirms that JPMorgan Chase processed subsequent payments tied to the same fraudulent chain. Defendants' silence on these concrete banking records undermines their extraterritoriality defense.

2. **Exhibit L** demonstrates that the laundering infrastructure operated through U.S.-based servers. Specifically,  identifies Cloudflare infrastructure in San Francisco as part of the routing of fraudulent domain activity linked to WestGateOptions and Binance's ecosystem. These further defeats Defendants' extraterritoriality argument.

3. Plaintiff proceeds under Rule 10b-5(a) and (c), which prohibit schemes and practices operating as a fraud. Reliance is not an element of such claims. Scheme liability requires only plausible allegations of manipulative or deceptive conduct in connection with securities transactions. Plaintiff's allegations—supported by Exhibits F, O, P, and L—meet this standard.

4. Plaintiff's blockchain analysis (**Exhibits N-B**–N-D(7)) reveals ongoing manipulative conduct. The wallet cluster into which Plaintiff's funds were funneled has remained active through September 2025,

accumulating over 102 BTC. This conduct aligns with wash-style and layering transactions traditionally recognized as commodities manipulation under the CEA.

5. Courts recognize that the securities and commodities statutes are fact-intensive inquiries unsuited for dismissal at the pleading stage. Whether digital assets qualify as securities or commodities is a mixed question of law and fact requiring discovery. See **SEC v. W.J. Howey Co.**, 328 U.S. 293, 298–99 (1946) (defining investment contract test). Defendants' attempt to foreclose these claims at the outset ignores both precedent and Plaintiff's fact-rich exhibits.

Viewed collectively, Exhibits F, O, P, L, and N-B–N-D(7) establish both a U.S. nexus and manipulative conduct. Defendants' silence on these exhibits reveals the weakness of their argument. Plaintiff's SEA and CEA claims are plausibly alleged and must proceed to discovery.

Defendants also misstate the governing standard. Plaintiff proceeds under Rule 10b-5(a) and (c), which impose scheme liability independent of misstatements. See Lorenzo v. SEC, 139 S. Ct. 1094, 1101–02 (2019). Reliance is not required where liability rests on deceptive conduct, as opposed to misrepresentations. Exhibits O, P, and L demonstrate precisely such conduct, through U.S. banking rails and infrastructure, thereby satisfying the statutory elements.

Defendants' contention that the Commodity Exchange Act does not apply ignores controlling authority. Courts have expressly recognized that virtual currencies qualify as commodities under the CEA. See CFTC v. McDonnell, 287 F. Supp. 3d 213, 228 (E.D.N.Y. 2018). Exhibits N-B through N-D(7), together with O and P, show manipulative wash-style transactions routed through U.S. banks and wallets, squarely within the scope of CEA jurisdiction.

### XII. DEFENDANTS' OMISSIONS CONFIRM PLAUSIBILITY

Defendants' Motion is notable not only for what it says, but for what it omits. These omissions are deliberate and confirm the plausibility of Plaintiff's claims.

1. Exhibits A and B. Exhibit A is Plaintiff's Final Notice invoking statutory duties under RICO, SEA, CEA, BSA, and Restatement § 876, and identifying convicted fraudster Okoro Tochukwu Joseph. **Exhibit B** shows that BAM deliberately returned this notice unopened.

2. **Exhibit C**. The FinCEN Consent Order documents systemic AML/KYC failures across Binance and its affiliates, including BAM Trading. Defendants refuse to acknowledge this binding federal finding because it destroys their separateness defense.

3. Exhibits D, K, and T. These reflect direct communications between Plaintiff and BAM's legal department, belying Defendants' claim that no duty exists without an account relationship.

4. Exhibits F, O, and P. These records trace Plaintiff's funds through Bank of America and JPMorgan mule accounts into 2025, contradicting Defendants' extraterritoriality defense.

5. **Exhibit L**. This connects laundering activity to Cloudflare infrastructure in San Francisco, further undercutting the extraterritoriality argument.

6. **Exhibits N-B through N-D(7) and H, H-2, I, J, M and S**. Filed concurrently with this Opposition, these exhibits show Plaintiff's wallet data, the ADR Protocol Letter, and chronological blockchain snapshots documenting growth from 89 BTC in 2022 to more than 102 BTC in 2025, as well as Plaintiff's regulatory complaints to FinCEN, the Financial Ombudsman Service, and Bitpanda. Together, they establish both origin and continuity of the enterprise, and underscore Plaintiff's exhaustion of remedies.

Viewed collectively, these omissions reveal Defendants' strategy: ignore statutory notice, disregard binding federal findings, and remain silent on banking records and blockchain continuity that defeat their statute of limitations and extraterritoriality defenses. Courts have warned against such tactics. See **Khoja v. Orexigen Therapeutics**, Inc., 899 F.3d 988, 1003 (9th Cir. 2018).

Defendants' own sworn declarations (Doc. 32-2) only compound the problem: admitting that BAM operated in California during the relevant period and even searched for Plaintiff's accounts—actions inconsistent with their "no duty, no venue" narrative. Their omissions thus become admissions against interest. Unlike in **Casey v. U.S. Bank**, 127 Cal. App. 4th 1138 (2005), where actual knowledge was absent, here Defendants had repeated notice and chose silence, transforming omission into affirmative conduct.

These omissions, combined with Defendants' selective arguments, confirm that dismissal is neither factually nor legally justified. The next section addresses why their affirmative arguments also collapse under the record.

Defendants' accusation that the Complaint is "self-compiled" and speculative fails under Ninth Circuit precedent. In Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1003 (9th Cir. 2018), the Court warned against selective omission and misuse of judicial notice to distort the record. Here, Defendants strategically omit Exhibits C, O, P, N-B–N-D(7), and others that directly establish duty, continuity, and U.S. nexus. Such omissions only underscore plausibility under Twombly and Iqbal, not defeat it.

**XIII. Defendants' Arguments Cannot Withstand Scrutiny**
Defendants' central contentions do not survive examination under the record and applicable law. Their Motion omits critical evidence, and the arguments advanced cannot overcome the exhibits already before the Court.

1. Statute of Limitations: Defendants assert that Plaintiff's claims accrued in March 2022 and are therefore barred. The exhibits prove otherwise. **Exhibits N-B** through N-D(7) trace Plaintiff's own wallets and transactions directly into the Binance [0000011bd9] cluster, which has remained active through September 2025. Under Grimmett v. Brown, 75 F.3d 506, 512 (9th Cir. 1996), each predicate act restarts the limitations period. Continuity of predicate acts is well-documented and defeats any limitations defense.

2. Duty and Account: Defendants contend that no BAM account forecloses duty. Yet their own conduct demonstrates the opposite. Exhibits D, K, and T show direct communications from BAM's legal department with Plaintiff, and Doc. 32-2 confirms an internal account search. A party does not undertake such an investigation absent recognition of duty and notice. These facts establish knowledge and engagement.

3. RICO / Enterprise: Defendants argue that Plaintiff has not adequately alleged an enterprise or pattern. The FinCEN Consent Order expressly references BAM Trading and documents systemic AML failures. Exhibits F, O, P, Q, R, and N-B–N-D(7) demonstrate structure, continuity, and purpose. At the pleading stage, this more than satisfies the Twombly/Iqbal standard.

4. Securities and Commodities: Defendants claim that Plaintiff's securities and commodities claims are extraterritorial and conclusory. Exhibits O and P show funds routed through Bank of America and JPMorgan Chase mule accounts, and **Exhibit L** identifies U.S.-based infrastructure. These records anchor the conduct within the United States and directly rebut the extraterritoriality defense.

5. Arbitration and Preservation: Defendants seek to minimize Plaintiff's references to arbitration **9 U.S.C. § 2** (FAA) risk and asset preservation. Yet Rule 1 mandates the "just, speedy, and inexpensive" resolution of actions, and Rule 65 authorizes provisional relief to prevent irreparable harm. Addressing foreseeable defenses and risks of dissipation ensures efficiency and protects the integrity of these proceedings.

In sum, none of Defendants' positions withstands scrutiny. The Complaint is detailed, fact-based, and supported by documentary evidence that directly contradicts their assertions.

Defendants also cannot rescue their position by reframing. They may attempt to compel arbitration or request a stay, yet agreements induced by fraud or applied to public-policy claims (e.g., FTC Act, BSA) are unenforceable. See **9 U.S.C. § 2**; McGill v. Citibank, N.A., 2 Cal.5th 945 (2017). Nor would a stay be appropriate where enforceability is contested, as courts in this District have consistently recognized. See Stiner v. Brookdale Senior Living, Inc., 383 F. Supp. 3d 949, 956 (N.D. Cal. 2019). Likewise, striking Plaintiff's exhibits or invoking Rule 11 would fail: the exhibits are authentic under 28 U.S.C. § 1746, and all claims rest on good-faith evidence and legal authority. Courts disfavor using Rule 11 as a tactical weapon.

**XIV. RISK OF IRREPARABLE HARM – PRESERVATION OF ASSETS**
Wallets directly connected to the fraudulent scheme currently hold more than 102 BTC (≈ €10 million). These assets remain active and subject to dissipation. If Defendants are permitted to continue without judicial oversight, restitution may become impossible.
Courts recognize that potential dissipation of significant funds constitutes irreparable harm. Johnson v. Couturier, 572 F.3d 1067, 1085 (9th Cir. 2009). Plaintiff therefore reserves the right to seek emergency injunctive relief under **FRCP 65** and Grupo Mexicano de Desarrollo v. Alliance Bond Fund, 527 U.S. 308 (1999)

**Exhibits N-D**(1)–N-D(7) and N-E show balances fluctuating between 89 and 103 BTC with single-day outflows exceeding $1 million. This evidence confirms imminent risk. Judicial preservation is essential to prevent this case from becoming moot.

### XV. PLAINTIFF IS ENTITLED TO DISCOVERY

Even if the Court harbors doubt about certain claims, dismissal is not the remedy. The Ninth Circuit has repeatedly held that leave to amend must be granted with "**extreme liberality**." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Here, Plaintiff has alleged specific facts, supported by more than thirty exhibits, establishing duty (Exhibits A, B, D, K, T, C), enterprise (Exhibit C, Q–R), U.S. nexus (Exhibits F, O, P, L), and ongoing misconduct (**Exhibits N-B**–N-D(7)). Defendants' silence on these exhibits underscores that their arguments cannot withstand factual scrutiny.

Whether digital assets qualify as securities or commodities, whether BAM's disclosures confirm integration, and whether the wallet clusters demonstrate continuity are fact-intensive questions that cannot be resolved on a **Rule 12(b)(6)** motion. These are matters for discovery, where documents, testimony, and data will confirm what Defendants already fear: their selectivity masks liability. Plaintiff is entitled to proceed to discovery.

### XVI. ALTERNATIVE: LEAVE TO AMEND

If the Court identifies any pleading deficiency, dismissal should be without prejudice and with leave to amend. The Ninth Circuit requires leave to amend to be granted with "**extreme liberality**." Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

### XVII. CONCLUSION

Defendants' Motion fails under the evidence before the Court of what it omits:

1. Statute of Limitations – **Exhibits N-B** and N-C–N-D(7) prove both origin and continuity of predicate acts into 2025. These exhibits directly contradict Defendants' position; their silence underscores this evidence defeats their SOL defense.

2. Duty – Exhibits A, B, D, K, T, and C establish notice, deliberate evasion, direct legal communications, and statutory obligations under the BSA and Restatement § 876. These exhibits directly contradict Defendants' position; their silence underscores this evidence disproves their "no account, no duty" narrative.

3. Enterprise and Predicate Acts (RICO) – **Exhibit C** (FinCEN Consent Order), Exhibits F, O, P (U.S. banks), and Exhibits Q–R (convicted fraudsters) demonstrate structure, continuity, and purpose. These exhibits directly contradict Defendants' position; their silence underscores this evidence confirms racketeering activity.

4. Securities and Commodities (SEA/CEA) – Exhibits F, O, P, L, and N-B–N-D(7) establish a U.S. nexus and manipulative conduct actionable under Rule 10b-5 and the CEA. These exhibits directly contradict Defendants' position; their silence underscores this evidence defeats their extraterritoriality argument.

5. ADR and Exhaustion – **Exhibit N** shows Plaintiff's good-faith effort to resolve the dispute through alternative remedies. These exhibits directly contradict Defendants' position; their silence underscores this it contradicts their request for dismissal with prejudice. **Exhibit H-2** – Plaintiff's formal May 2025 submission to FinCEN attaching blockchain continuity evidence, extending both the regulatory timeline and exhaustion of remedies.

6. **Exhibit M** is the closure letter from external case support dated May 15, 2025. It confirms that Plaintiff exhausted third-party and out-of-court support channels before pursuing litigation. This record reinforces Plaintiff's good-faith efforts to resolve the dispute outside court, further undercutting Defendants' narrative that litigation was rushed or premature.

7. **Exhibit S** provides a consolidated timeline of Plaintiff's global complaints between 2022 and 2025, including filings with Kifid, the Austrian FMA, VARA, and law enforcement authorities. This chronology demonstrates consistency, diligence, and the exhaustion of remedies across multiple jurisdictions, all of which Defendants strategically ignore in their Motion.

Defendants even submit a proposed order (Doc. 32-3) seeking dismissal "with prejudice." Such a request is inconsistent with Ninth Circuit precedent, which requires dismissal, if any, to be **without prejudice and with leave to amend**. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Defendants' strategy of selective silence does not cure their legal deficiencies. It only underscores them. Plaintiff's Complaint is not conclusory; it is fact-rich, regulator-confirmed, and supported by documentary evidence Defendants refuse to confront.

Defendants' Motion collapses under controlling precedent. The statute of limitations defense is defeated by Rotella v. Wood, 528 U.S. 549 (2000), and Grimmett v. Brown, 75 F.3d 506 (9th Cir. 1996), which hold that RICO accrual runs from discovery of injury and that each new predicate act restarts the limitations period. Their "no duty" defense is contradicted by their own conduct and by Casey v. U.S. Bank, 127 Cal. App. 4th 1138 (2005), which confirms liability attaches when actual knowledge and substantial assistance are present. Their SEA argument ignores Lorenzo v. SEC, 139 S. Ct. 1094 (2019), confirming scheme liability under Rule 10b-5(a) and (c). Their RICO enterprise challenge fails under Boyle v. United States, 556 U.S. 938 (2009), which recognizes that an association-in-fact suffices at the pleading stage. Their dismissal of CEA claims is refuted by CFTC v. McDonnell, 287 F. Supp. 3d 213 (E.D.N.Y. 2018), which holds that virtual currencies are commodities. And their reliance on omissions and judicial notice runs afoul of Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1003 (9th Cir. 2018).

Taken together, these authorities confirm that Plaintiff's Complaint is timely, well-pleaded, and fact-rich. Defendants' selective silence and mischaracterizations cannot erase binding precedent or the thirty-plus exhibits already before this Court. For these reasons, the Motion to Dismiss must be denied in its entirety, or, in the alternative, dismissed without prejudice and with leave to amend.

The Ninth Circuit has made clear that arguments introduced for the first time in a reply brief are not properly before the Court. See Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007).

For these reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety. In the alternative, dismissal should be **without prejudice and with leave to amend**.

Respectfully submitted,

Dated: September 22, 2025

/s/ Inge Van Hees
Plaintiff, Pro Se
Email: inge.van.hees@proton.me

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2025, I served the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS on counsel for Defendant via the Court's CM/ECF system, which will automatically send notice to all registered participants.